IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN DAVILA-BAJANA, | ) | Civil Action No. 04-253E |
| | ) | |
| Plaintiff, | ) | Hon. Sean J. McLaughlin |
| | ) | United States District |
| v. | ) | Judge |
| | ) | |
| TIM HOLOHAN, et al., | ) | Hon. Susan Paradise Baxter |
| | ) | Chief United States Magistrate |
| Defendants. | ) | Judge |
| | ) | |
| | ) | ELECTRONICALLY FILED |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT**

AND NOW, come Defendants, by their attorneys, Mary Beth
Buchanan, United States Attorney for the Western District of
Pennsylvania; Paul D. Kovac, Assistant United States Attorney for
said district; and Douglas S. Goldring, Assistant General
Counsel, Federal Prison Industries, Inc., and respectfully submit
this Memorandum of Law in Support of Defendants' Motion, pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to
dismiss Plaintiff's Complaint for failure to state a claim upon
which relief can be granted.[1]

_____

[1] For purposes of this Motion to Dismiss, all well-pleaded
facts in Plaintiff's Complaint and any attachments thereto, are
presumed to be true. Typically, in a Rule 12(b)(6) motion,
consideration is limited to the contents of the pleadings and
attachments.  However, matters of public record, orders, items
appearing in the record, and attached exhibits may be taken into
account.  See Yanacos v. Lake County, 953 F. Supp. 187, 191 (N.D.
Ohio 1996) (citing Chester County Intermediate Unit v. Penn. Blue
Shield, 896 F.2d 808 (3d Cir. 1990).

## I.  FACTS

The underlying facts in this case are not in dispute. Plaintiff is prisoner Juan Davila-Bajana, Register Number 47580-053.  At all times relevant to this action, Plaintiff was serving a 20-year sentence for Conspiracy to Distribute Cocaine and Heroin, in violation of 21 U.S.C. §§ 841 and 846.  Exhibit ("Ex.") 1 (Plaintiff's Sentence Monitoring Computation Data). His projected release date is November 11, 2016, via Good Conduct Time release.  Id.

On or around April 1, 1998, Plaintiff was designated to the Federal Correctional Institution in McKean, Pennsylvania (FCI McKean), where he remains housed at this time.  Complaint at ¶ 6; Ex. 2 (Plaintiff's Inmate History).  While housed in FCI McKean, Plaintiff was assigned to work in the Federal Prison Industries, Inc. (FPI or trade name UNICOR) factory in FCI McKean.  Complaint at ¶ 8; Ex. 3 (Plaintiff's Inmate Work History).  This work assignment first occurred on or around March 23, 1999.  Id.  On or around March 31, 2003, Plaintiff was finally and permanently removed from his FPI work assignment.  Id.; Complaint at ¶ 9.

By his Complaint, Plaintiff raises three claims.  First, Plaintiff alleges, in accordance with Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), that while he was assigned to work in the FPI factory, he was exposed to tobacco smoke and silica dust, in violation of the Eighth

2

Amendment.  Complaint at ¶¶ 1, 12.  Second, Plaintiff alleges
that he was removed from his FPI work assignment as a result of
his complaints relating to this exposure and asserts this claim
as a First Amendment violation.  Id.  Third, Plaintiff asserts a
claim against Defendants for negligence in violation of the
Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671.  As relief,
Plaintiff seeks compensatory and punitive damages relating to
these allegations.

## II.    QUESTIONS PRESENTED

1.    Whether, to the extent Plaintiff's complaint alleges a
      Constitutional violation, he failed to exhaust all available
      administrative remedies pursuant to the Prison Litigation
      Reform Act (PLRA), 42 U.S.C. § 1997e(a).

2.    Whether Plaintiff is barred from asserting an FTCA claim,
      due to the expiration of the Statute of Limitations.

## III.   LEGAL ARGUMENT

### A.    Standard of Review for a 12(b)(6) Motion to Dismiss

In a Rule 12(b)(6) Motion to Dismiss, the Complaint is
liberally construed, and all well-pleaded fact allegations and
any reasonable inferences to be drawn from the facts alleged are
viewed in the light most favorable to the non-moving party.
Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F. 3d 1380, 1384
(3rd Cir. 1994).  This concession of truth, however, goes only to
well-pleaded fact allegations, not legal or unsupported

3

conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  <u>See Miree v. Dekalb County, Ga.</u>, 433 U.S. 25, 27 n. 2 (1977); <u>Wilson Legal Found. v. Massachusetts Bar Found.</u>, 993 F.2d 962, 971 (1st Cir. 1993); <u>Violanti v. Emory Worldwide A-CF Co.</u>, 847 F. Supp. 1251, 1255 (M.D. Pa. 1994).  Moreover, the claimant must set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.  See Fed. R. Civ. P. 8(a)(2); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-6 (1957).

In short, the Court must dissect the Complaint; eliminate mere rhetoric, legal conclusions, and unsupported factual conclusions; and determine whether or not well-pleaded fact allegations, when construed in a light more favorable to the Plaintiff, state a factual claim on some legal theory upon which relief can be granted, but not whether a plaintiff will ultimately prevail on that claim.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

**B.  Plaintiff's Eighth Amendment Claim Should Be Dismissed Because He Has Not Exhausted All Available Administrative <u>Remedies, as Required by the PLRA.</u>**

**1.  Exhaustion Is Properly Considered as a Motion to Dismiss Pursuant to Rule 12(b)(6), and Therefore, Conversion to a Motion for Summary Judgment Is <u>Not Required.</u>**

Although not a matter of first impression in the Third Circuit, the question of dismissal of an action for failure to

exhaust administrative remedies pursuant to Rule 12(b)(6) instead of Rule 56 has not been widely developed. <u>Spruill v. Gillis</u>, 372 F.3d 218 (3rd Cir. 2004). <u>See also</u> <u>Steele v. BOP</u>, 355 F.3d 1204 (10th Cir. 2003); <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003) (failure to exhaust nonjudicial remedies should be treated as a matter in abatement which is subject to an unenumerated motion to dismiss rather than a motion for summary judgment).[2]

In <u>Steele</u>, the Tenth Circuit reviewed a lower court's dismissal, pursuant to Fed. Rule Civ. P. 12(b)(6), of an inmate's Complaint for failure to exhaust administrative remedies pursuant to the PLRA, 42 U.S.C. § 1997e(a). Although Plaintiff did not mention exhaustion in the Complaint, the court allowed the Defendants to raise exhaustion in their 12(b)(6) Motion to Dismiss, and further allowed them to submit "affidavits and other evidentiary material which confirmed that Steele had filed an administrative tort claim but had not pursued administrative remedies." <u>Steele</u>, 355 F.3d at 1207.

---

[2] The only other Third Circuit case to address this issue was <u>Brown v. Croak</u>, 312 F.3d 109 (3rd Cir. 2002). That case is clearly distinguishable, however. There, the court identified a material issue of fact regarding statements made by staff members to the inmate regarding the timing of his grievance submissions. As such, the Third Circuit determined that "Brown's claim that prison officials told him to wait is a factual question that is disputed, has not yet been disproved by defendants, and has not been resolved by a trier of fact." <u>Id.</u> at 112. No such issue of fact exists in the present case, and therefore, <u>Brown</u> does not apply.

In affirming the dismissal of Steele's case pursuant to Rule 12(b)(6), the Tenth Circuit held that the consideration of documents submitted by the defendants to support their exhaustion defense was proper.  Specifically, the Court held:

> In deciding a Rule 12(b)(6) motion based on exhaustion, the court may consider the attached administrative materials.  <u>See</u> <u>Oxendine v. Kaplan</u>, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that court may look both to complaint itself and to any documents attached as exhibits to complaint).  And if the prisoner "does not incorporate by reference or attach" the administrative decision, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." <u>GFF Corp. v. Associated Wholesale Grocers, Inc.</u>, 130 F.3d 1381, 1384 (10th Cir. 1997). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." <u>Id.</u> at 1385. Accordingly, the court may determine from the complaint, as supplemented by administrative documents or a declaration, that a prisoner has failed to exhaust his prison remedies and may dismiss the action pursuant to Rule 12(b)(6).

<u>Id.</u> at 1212.  The logic and holding of the Tenth Circuit was adopted by the Third Circuit in <u>Spruill</u>, 372 F.3d at 218.  There, as in <u>Steele</u>, the district court considered (and ultimately granted) defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (based in part upon exhaustion of administrative remedies) without converting it to a motion for summary judgment. In support, the Third Circuit relied upon <u>Steele</u>, holding that a defendant may submit an "indisputably authentic copy" of the administrative materials to the court to be considered on a motion to dismiss, without converting it to a motion for summary judgment.  <u>Spruill</u>, 372 F.3d at 223 (citing <u>Steele</u>, 355 F.3d at

1212).  Thus, the Court may clearly consider the indisputably
authentic copies of Plaintiff's administrative materials (as well
as the computer printout which is submitted for reference)
without converting this motion to a motion for summary judgment.
See Exs. 1-8 (administrative materials including computer
printout of claims); Ex. 9 (certificate of authenticity).

### 2.  Exhaustion of Administrative Remedies Is Mandatory Under the Prison Litigation Reform Act.

The purpose of requiring that an inmate exhaust his
administrative remedies within the Federal Bureau of Prisons
("BOP") is apparent on its face.  The overburdened Federal Court
system does not have the time to deal with all the problems that
arise between a federal inmate and the BOP.  The BOP should be
given a chance to resolve the problems between itself and the
inmate or make the appropriate record before the inmate is
allowed to bring his complaints to Federal Court.  Even though
Plaintiff is quick to invoke the jurisdiction of this Court, he
has not been willing to invest the time to properly exhaust all
administrative remedies.

In the past, courts have allowed actions to proceed, despite
the litigant's failure to exhaust administrative remedies, where
it was shown that the administrative remedy process would be
futile, or that the relief sought was unavailable through the
administrative process.  In such cases, litigants had been
permitted to proceed directly to court with their complaints.
McCarthy v. Madigan, 503 U.S. 140 (1992).  Any such exceptions to

the exhaustion requirement, however, were superceded by the

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which states:

> No action shall be brought with respect to prison
> conditions under [42 U.S.C. § 1983], or **any other
> Federal law**, by a prisoner confined to any jail,
> prison, or other correctional facility **until such
> administrative remedies as are available are
> exhausted.**

Pub.L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996) (codified at

42 U.S.C. § 1997e(a)(1996))(emphasis added).  See also Porter v.

Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731

(2001); Nyhuis v. Reno, 204 F.3d 65 (3rd Cir. 2000).

In Booth, the Supreme Court noted by enacting the PLRA

exhaustion requirement, Congress intended to overturn existing

case law which allowed exceptions to the exhaustion requirement.

In so holding, the Court stated, "[t]hat scheme, however, is now

a thing of the past, for the amendments eliminated both the

discretion to dispense with administrative exhaustion and the

condition that the remedy be 'plain, speedy and effective' before

exhaustion could be required."  Booth, 532 U.S. at 738.  Thus, by

removing the phrase, "plain, speedy and effective," Congress

intended to eliminate all exceptions to the exhaustion

requirement.  Id.

In recognizing that this analysis was intentionally and

explicitly reversed by Congress, the Supreme Court stated:

> When Congress replaced the text of the statute as
> construed in McCarthy with the exhaustion requirement
> at issue today, it presumably understood that under
> McCarthy the term "effective" in the former § 1997e(a)

      eliminated the possibility of requiring exhaustion of
administrative remedies when an inmate sought only
monetary relief and the administrative process offered
none.  It has to be significant that Congress removed
the very term we had previously emphasized in reaching
the result Booth now seeks, and the fair inference to
be drawn is that Congress meant to preclude the
<u>McCarthy</u> result.  Congress's imposition of an obviously
broader exhaustion requirement makes it highly
implausible that it meant to give prisoners a strong
inducement to skip the administrative process simply by
limiting prayers for relief to money damages not
offered through administrative grievance mechanisms.

      Thus, we think that Congress has mandated exhaustion
clearly enough, regardless of the relief offered
through administrative procedures.

<u>Booth</u>, 532 U.S. at 739-40.

      On February 26, 2002, the Supreme Court again revisited the

PLRA exhaustion requirement, holding that 42 U.S.C. § 1997e(a)

requires that all administrative remedies be exhausted before an

action is filed in Federal Court.  <u>Porter v. Nussle</u>, 534 U.S. 516

(2002).  There, an inmate in the Connecticut state prison system,

Ronald Nussle, filed a complaint alleging that he was singled out

for a severe beating by prison officials.  Specifically, he

alleged that he was the subject of "a prolonged and sustained

pattern of harassment and intimidation," because he was perceived

to be a friend of the Governor of Connecticut.  <u>Porter</u>, 534 U.S.

at 520-21.

      Despite the fact that Connecticut had a grievance system

which allowed inmates to file a grievance within 30 days of the

occurrence, Nussle commenced a lawsuit in Federal District Court

without pursuing a single grievance.  As in <u>Booth</u>, Nussle alleged

that the actions of correctional officers violated his right to
be free from cruel and unusual punishment, in violation of the
Eighth Amendment.  Id.

The district court dismissed Nussle's complaint for failure
to exhaust administrative remedies pursuant to 42 U.S.C.
§ 1997e(a).  The Second Circuit reversed this decision, however,
holding that exhaustion is not required in actions alleging
excessive use of force.  Specifically, the Second Circuit held
that the PLRA's exhaustion requirement applied only to
circumstances affecting everyone in the area, not single or
momentary matters such as beatings directed at a particular
individual.  Porter, 534 U.S. at 521-23.

In rejecting the Second Circuit's reasoning, the Supreme
Court held "in line with the text and purpose of the PLRA, our
precedent in point, and the weight of lower court authority, that
§ 1997e(a)'s exhaustion requirement applies to all prisoners
seeking redress for prison circumstances or occurrences."
Porter, 534 U.S. at 520.  The Supreme Court further stated:

> The current exhaustion provision differs markedly from
> its predecessor.  Once within the discretion of the
> district court, exhaustion in cases covered by
> § 1997e(a) is now mandatory . . . And unlike the
> previous provision, which encompassed only
> § 1983 suits, exhaustion is now required for all
> 'action[s] . . . brought with respect to prison
> conditions,' whether under § 1983 or 'any other Federal
> law.' . . .

Porter, 534 U.S. at 524-25 (emphasis added).  Thus, the Court
concluded the PLRA's exhaustion requirement "applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532. Accordingly, exhaustion of administrative remedies is a mandatory prerequisite for the constitutional claims Plaintiff has raised in his Complaint.

The BOP has established an Administrative Remedy Procedure through which an inmate can seek formal review of any complaint regarding any aspect of his imprisonment. 28 C.F.R. Part 542. This process is commenced by presenting "an issue of concern informally to staff, and staff shall attempt to informally resolve the issue." 28 C.F.R. § 542.13(a). If the attempt to informally resolve is not successful, the inmate may submit a Request for Administrative Remedy to the Warden of the facility within 20 calendar days of the date on which the basis for the request occurred. 28 C.F.R. § 542.14(a).

If an inmate is dissatisfied with the Warden's response, that inmate may submit an appeal to the Regional Director within 20 calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). Similarly, an inmate may appeal the decision of the Regional Director to the BOP General Counsel within 30 days of the date on which the Regional Director signed the response. 28 C.F.R. § 542.15(a). An administrative remedy is

11

not considered to have been fully exhausted unless it has been denied on the merits at each level of review.[3]

### 3. Plaintiff Has Failed to Exhaust All Administrative Remedies Concerning His Eighth Amendment Deliberate Indifference Claim.

The record clearly demonstrates that Plaintiff has failed to properly exhaust administrative remedies concerning his Eighth Amendment claim.  By his Complaint, Plaintiff alleges that Defendants have "violated my Eighth Amendment Right to be free from cruel and unusual punishment by deliberately, sadistically and negligently repeatedly (sic) exposed me for years to excessive ETS and silica dust."  Complaint at ¶ 12.  However, nowhere in Plaintiff's administrative claim does he ever specifically raise an Eighth Amendment deliberate indifference allegation.  Instead, Plaintiff's administrative claim was solely focused upon his First Amendment claim of being terminated from his UNICOR position in "retaliation for complaining about . . . secondhand smoke."  Ex. 5; see also Complaint at ¶ 12.

Plaintiff first submitted a Request for Administrative Remedy with the Warden at FCI McKean in April 2003.  See Complaint at ¶ 9; Ex. 4 (Plaintiff's Administrative Remedy Generalized Retrieval).  This request (Administrative ID Number

---

[3] A Request for Administrative Remedy may be rejected at any level if it is written in a manner which is "obscene or abusive, or does not meet any other requirement of [28 C.F.R. Part 542]."  See 28 C.F.R. § 542.17(a).  A rejection of a submission at any level is not the same as a denial of the request on the merits.

297804-F1) sought a return to UNICOR's night shift. <u>Id.</u>  This remedy was subsequently voluntarily withdrawn by Plaintiff on or around May 1, 2003.[4]  Exs. 4 and 5; Complaint at ¶ 9. Plaintiff's next request was also submitted to the Warden.  Ex. 5.  In Administrative Remedy Number 304411-F1 (<u>id.</u>), Plaintiff sought reinstatement to his FPI work assignment and complained of retaliation.  <u>Id.</u>  This request was denied by the Warden on or around July 11, 2003.  Exs. 4 and 5.  Plaintiff appealed this administrative remedy to the Northeast Regional Office (Ex. 6) and finally to the National Inmate Appeals Coordinator (Ex. 7).[5] However, none of these requests for administrative remedy relate to any of the Eighth Amendment violations alleged in Plaintiff's Complaint.  Ex. 4.  Instead, the administrative requests are focused solely upon Plaintiff's First Amendment retaliation claim.

Finally, Plaintiff also submitted an Administrative Tort Claim, pursuant to 28 U.S.C. § 2675.  That claim was denied by the Northeast Regional Office on or around December 12, 2003. <u>See</u> Ex. 8 (Claim for Damage, Injury, or Death and the response).

---

[4]  When a Request for Administrative Remedy is withdrawn or rejected at any level, an entry is made in the computer database; however, no hard copies of the request are maintained by the BOP. As such, copies are only available for those requests which are accepted for a decision on the merits.  Additionally, unlike a rejection, no information is provided as to the reasons a Request for Administrative Remedy may be withdrawn.

[5] Plaintiff also submitted four Requests for Administrative Remedy relating to medical care, which are not related to the present action.  Ex. 4.

A tort claim, however, is insufficient to satisfy the exhaustion requirement in 42 U.S.C. § 1997e(a).  See Steele v. BOP, 355 F.3d 1204, 1206 (10th Cir. 2003) (noting the distinction between an Administrative Tort Claim and Administrative Remedy); Hylton v. BOP, 2002 WL 720605, *2 (E.D. NY 2002) (Discussing at length the difference between an Administrative Tort Claim and Administrative Remedy); Funches v. Reish, 1998 WL 695904, *7-9 (S.D. NY 1998)(same).[6]  Specifically, an Administrative Tort Claim serves only to place the agency on notice that staff may have acted negligently or carelessly, and allows an inmate to be compensated for any injuries or damage to his property.  Id. Notably, it does not afford a thorough and localized review of institution procedures, nor does it serve as an agent of change, unlike the Administrative Remedy, whose purpose is to rectify a complaint, create a record, and justify its procedures.  Id.  See also Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731 (2001); Nyhuis v. Reno, 204 F.3d 65 (3rd Cir. 2000). Thus, filing an Administrative Tort Claim does not satisfy the stated intent of Congress in amending the exhaustion requirement. As such, filing an Administrative Tort Claim pursuant to 28 U.S.C. § 2675 cannot serve as a substitute for filing an Administrative Remedy pursuant to 42 U.S.C. § 1997e(a).

---

[6]  This issue has never been directly addressed by the Third Circuit or the Western District of Pennsylvania.

14

Accordingly, it is clear that Plaintiff has not exhausted all available administrative remedies pursuant to the PLRA, 42 U.S.C. § 1997e(a) concerning his Eighth Amendment deliberate indifference claim. Moreover, Plaintiff's attempt to resolve this issue by filing an Administrative Tort Claim does not satisfy the intent of the exhaustion requirement pursuant to 42 U.S.C. § 1997e(a). Therefore, Plaintiff's Eighth Amendment violation has not been properly exhausted, and this claim should be dismissed by the Court.

C.    **The Total Exhaustion Doctrine Mandates Dismissal of the Entire Complaint, Including the First Amendment Claim.**

As demonstrated above, it is clear from the record that Plaintiff has not exhausted all available administrative remedies with respect to his Eighth Amendment claims. Exs. 4-7. Defendants now urge the Court to follow the lead of those courts which have adopted a Total Exhaustion Rule, which would result in the dismissal of the entire Complaint (including Plaintiff's First Amendment Complaint) for failure to exhaust, rather than a piecemeal dismissal of only those claims which have not been exhausted. The conclusion that the Total Exhaustion Rule should be applied is based upon the PLRA's exhaustion provision, 42 U.S.C. § 1997e(a), which contemplates that all claims brought to the district court in one action must have been exhausted prior to the initiation of the action. That is, a district court must terminate a <u>Bivens</u> action entirely if <u>any</u> of Plaintiff's claims

15

are not properly exhausted (as opposed to a piecemeal approach
that drops only those claims which are not exhausted).

Although the Third Circuit has not specifically addressed
the Total Exhaustion Rule, at least one district court in the
Circuit has adopted the rule.  As the United States District
Court for the District of New Jersey explained:

> By using the term "action" rather than "claim,"
> Congress made clear its intent that prisoners be
> required to exhaust all claims before the action was
> allowed to proceed.  Indeed, Congress defined the term
> "action with regard to prison conditions" in another
> provision of the PLRA as "any civil proceeding ... with
> respect to the conditions of confinement or the effects
> of actions by government officials on the lives of
> persons confined in prison...." 18 U.S.C. § 3626(g)(2).
> . .  The plain meaning of "action" and "civil
> proceeding" are patently distinct from "claim."
>
> Furthermore, comparison with other provisions of 1997e
> makes this distinction even clearer.  Section
> 1997e(c)(1) provides that a district court shall
> dismiss any "action" which is frivolous or fails to
> state a claim.  In contrast, § 1997e(c)(2) provides
> that the district court may dismiss a "claim" which is
> frivolous or fails to state a claim even if that
> "claim" has not been exhausted.  Congress's use of the
> different terms indicates that it intended different
> meanings.

Rivera v. Whitman, 161 F. Supp.2d 337, 339-43 (D. N.J. 2001)
(abrogated on other grounds by Ray v. Kertes, 285 F.3d 287, 293
n.6 (3rd Cir. 2002)).  The Eighth and Tenth Circuits have also
agreed, adopting the Total Exhaustion Rule as part of the PLRA
exhaustion requirement.  Graves v. Norris, 218 F.3d 884,

16

885 (8th Cir. 2000) (per curiam); <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1188-90 (10th Cir. 2004).[7]

A Total Exhaustion Rule is also consistent with the PLRA's legislative history and goal of "reducing frivolous prisoner litigation and promoting judicial economy." <u>Rivera</u>, 161 F. Supp.2d at 341-42; <u>Graves v. Norris</u>, 218 F.3d 884, 885 (8th Cir. 2000) (per curiam); <u>Ross v. County of Bernalillo</u>, 365 F.3d at 1188-90. "[B]y requiring that all claims be exhausted before the federal court considers them, § 1997e(a) ensures that prisoner actions are more focused and that some frivolous claims are screened out." <u>Id</u>. Additionally, the Total Exhaustion Rule "frees the federal court from the potentially difficult and time-consuming process of determining precisely which of the often-entangled claims have been exhausted and which have not." <u>Id.</u> This rule also promotes comity, by allowing the prisons to address, and remedy, problems before the prisoners file suit. <u>Id.</u>

_____

[7] No circuit court has refused to adopt the Total Exhaustion Rule. Two circuits have mentioned the issue without resolving it. <u>Ortiz v. McBride</u>, 323 F. 3d 191 (2nd Cir. 2003); <u>Burton v. Jones</u>, 321 F.3d 569 (6th Cir. 2003). It appears that the issue of Total Exhaustion has been raised before the Third Circuit only on one occasion. As mentioned above, the District of New Jersey adopted the rule in <u>Rivera</u>, 161 F. Supp. 2d at 339-43. On appeal, the Third Circuit refused to object to, but did not otherwise mention, the rule adopted by the District of New Jersey. <u>Ray</u>, 285 F.3d at 293.

The concept of a total exhaustion rule is not unknown to Federal District Courts.  To be sure, the Total Exhaustion Rule is well-established in Federal Habeas Corpus litigation.  <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  In <u>Ross v. Bernalillo</u>, the Tenth Circuit extensively reviewed the Supreme Court's holding in <u>Rose</u>:

> The Court began by observing that the text of 28 U.S.C. § 2254 did not address the question of whether Congress intended to create a total exhaustion requirement. [Rose] at 516-17, 102 S.Ct. 1198 ("[I]n all likelihood Congress never thought of the problem.")  Accordingly, the Court based its decision on the policies underlying the statutory provision.  Id. at 517, 102 S.Ct. 1198. Emphasizing comity principles, the Court reasoned that the total exhaustion doctrine would 1) encourage prisoners to seek full relief first from the state courts, thus giving states the first opportunity to review claims of error, 2) create a more complete factual record that will aid federal courts in their review, and 3) relieve district courts of the difficult task of deciding whether multiple claims are severable. Id. at 518-19, 102 S.Ct. 1198.
>
> The Court next rejected the argument that the total exhaustion rule would act as a trap for unwary pro se litigants.  Id. at 520, 102 S.Ct. 1198.  "[O]ur interpretation of § 2254(b), (c) provides a simple and clear instruction to potential litigants:  before you bring any claims to federal court, be sure that you have first taken each one to state court.  Just as pro se petitioners have managed to use the federal habeas machinery, so too should they be able to master this straightforward exhaustion requirement."  <u>Id.</u> Moreover, the Court noted that even if a prisoner improperly submitted a petition containing one or more unexhausted claims, he or she would then be able to resubmit a petition containing only the exhausted claims.  <u>Id.</u>
>
> Finally, the Court rejected the argument that the total exhaustion rule might increase the burden on federal courts.  To the contrary, the Court noted that such a rule would actually promote judicial efficiency by discouraging piecemeal litigation at least to some

> extent.  <u>Id.</u>  Under a total exhaustion rule, 'both the
> courts and the prisoners should benefit, for as a
> result the district court will be more likely to review
> all of the prisoner's claims in a single proceeding,
> thus providing for a more focused and thorough review.'
> <u>Id.</u>

<u>Ross</u>, 365 F. 3d at 1189.

The Tenth Circuit went on to explain that the same analysis which led the Supreme Court to find a Total Exhaustion Rule in the habeas context also led to the conclusion that a Total Exhaustion Rule must be included in the PLRA exhaustion requirement.  As such, the Tenth Circuit reasoned that the policies of the PLRA "strongly support a reading of that statute that requires inmates to exhaust fully all of their claims before filing in Federal Court.  <u>Id.</u> at 1190.

Thus, Defendants urge this Court to adopt the reasoning of the Eighth and Tenth Circuits and one other district court in this circuit in finding that the policies underlying the PLRA point toward a requirement of total exhaustion.  As demonstrated above, Plaintiff has not exhausted all available administrative remedies with respect to his Eighth Amendment claims.  Therefore, pursuant to the Total Exhaustion Rule, the Court should dismiss this entire Complaint, including Plaintiff's First Amendment claim.

**D.  Plaintiff's FTCA Claim Must Be Dismissed, as He Failed to Bring This Action Within Six Months of the Final Denial as Required by 28 U.S.C. § 2401(b), and His Claim Is Therefore Time-Barred.**

To the extent Plaintiff has attempted to state a claim for negligence pursuant to the FTCA, 28 U.S.C. § 2671, et seq., his claim is barred by the six-month statute of limitations.  28 U.S.C. § 2401(b).  See Pascale v. United States of America, 998 F.2d 186 (3rd Cir. 1993); Complaint at ¶¶ 2, 4 (raising the FTCA claim).  This statute of limitations requirement is strictly construed to run from the date of mailing of the denial of a Plaintiff's administrative claim.  Hammond v. United States of America, 613 F. Supp. 358 (W.D. Pa. 1985); Tuttle v. United States Postal Service, 585 F.Supp. 55 (M.D.Pa.), aff'd 735 F.2d 1351 (3d Cir. 1984).  Additionally, if the statute is not satisfied, the court may not extend the six-month time period. See United States v. Kubrick, 444 U.S. 111, 117-118 (1979).

In the present case, Plaintiff submitted his administrative tort claim to the Northeast Regional Office on or around July 5, 2003.  Ex. 8.  In this claim, Plaintiff alleged that he had been exposed to environmental tobacco smoke and silica dust while assigned to FPI, and sought $2.5 million.  Id.  This claim was denied by the Northeast Regional Counsel on December 12, 2003. Id.  On or around December 28, 2003, Plaintiff signed an acknowledgment indicating that he had received this denial.  Id. Thus, according to the statute, Plaintiff's tort action for

20

negligence should have been filed within six months, or prior to June 12, 2004. According to the docket sheet, however, Plaintiff's Complaint was not received by this Court until September 7, 2004, well beyond the expiration of the statute of limitations. Plaintiff failed to timely file his Complaint despite the administrative denial letter's specific instruction that Plaintiff could "bring an action against the United States in an appropriate United States District Court within **six (6) months** of the date of this memorandum." Ex. 8 (emphasis added).

Because Plaintiff, in this cause of action, failed to file his Complaint within the six-month time limitation set forth under 28 U.S.C. § 2401(b), the tort claim portion of Plaintiff's Complaint is time-barred and must be dismissed.

**E.    Alternatively, Plaintiff's FTCA Claim Is Barred by the Doctrine of Sovereign Immunity.**

Even if Plaintiff's FTCA claim were timely filed, it would still be barred by the doctrine of sovereign immunity. Although, under the holding in <u>Bivens</u>, Plaintiff may assert a claim for alleged constitutional violations against individual federal defendants, a <u>Bivens</u>-type action against the United States is barred by the doctrine of sovereign immunity. <u>Federal Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471, 483-86 (1994); <u>see also</u> <u>Biase v. Kaplan</u>, 852 F. Supp. 268, 279-80 (D.N.J. 1994). Such claims can only be brought against federal officers in their individual capacities. <u>Id</u>. In other words, while Plaintiff may assert claims against individual federal agents for alleged violations

21

of his constitutional rights, he cannot similarly assert a claim against the United States, their employer.  Id.; see generally Jaffee v. United States, 592 F.2d 712, 716-17 (3d Cir. 1979); Hartje v. FTC, 106 F.3d 1406, 1408 (8th Cir. 1997); Vaccaro v. Dobre, 81 F.3d 854, 856-57 (9th Cir. 1996).  Thus, to the extent that Plaintiff's Complaint may assert constitutional violations against the United States or federal employees in their official capacities, such claims fail as a matter of law and must be dismissed.

## IV.  CONCLUSION

For these reasons, Defendants respectfully request that Plaintiff's entire Complaint be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

Respectfully submitted,

MARY BETH BUCHANAN
UNITED STATES ATTORNEY


s/Paul D. Kovac
PAUL D. KOVAC
Assistant United States Attorney
Western District of Pennsylvania
U.S. Post Office and Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7489

OF COUNSEL:            DOUGLAS S. GOLDRING
Assistant General Counsel
Federal Prison Industries (UNICOR)
400 First Street, NW, 8th Floor
Washington, DC 20534


Dated:  November 14, 2005

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2005, I electronically filed and/or caused to be served via first-class U.S. mail, a true and correct copy of **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** to the following:

    Mr. Juan Davila-Bajana
    Plaintiff Pro Se
    Reg. No. 47580-053
    FCI-McKean
    Post Office Box 8000
    Bradford, PA 16701


        s/Paul D. Kovac
        PAUL D. KOVAC
        Assistant U.S. Attorney