IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN DAVILA-BAJANA, | ) | Civil Action No. 04-253E |
| | ) | |
| Plaintiff, | ) | Hon. Sean J. McLaughlin |
| | ) | United States District Judge |
| v. | ) | |
| | ) | Hon. Susan Paradise Baxter |
| TIM HOLOHAN, et al., | ) | Chief United States Magistrate Judge |
| | ) | |
| Defendants. | ) | ELECTRONICALLY FILED |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

The Federal Defendants,[1] by and through their attorneys Mary Beth Buchanan, United

States Attorney; Paul D. Kovac, Assistant United States Attorney; and Douglas S. Goldring,

Assistant General Counsel, Federal Prison Industries, Inc., move this Court to dismiss the

complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Alternatively, summary judgment should be awarded in Defendants' favor pursuant to Rule 56.

---

[1] At this time, Defendants Forsyth and Klark still have not been personally served with
the complaint and summons in accordance with Rule 4, and efforts to obtain additional directions
for service from the Plaintiff have been unsuccessful. See Dkt. No. 44 (Ltr. from U.S. Marshals
dtd. Jul. 6, 2006). Moreover, Defendant Klark is now retired and Defendants would only be
responsible for providing the last known address of this individual. Accordingly, these two
defendants should be dismissed pursuant to Rules 12(b)(2) & (b)(5). The fact that Plaintiff is pro
se should not excuse this jurisdictional defect especially where he has been given plenty of
opportunity to inform the Marshal's Service of the correct address for these Defendants. Hassell
v. United States, 203 F.R.D. 241, 245 (N.D. Tex. 1999)("That Plaintiff is pro se does not mean
he does not have to comply with the Federal Rules of Civil Procedure.") . Assuming the Court
does not dismiss for lack of personal jurisdiction, Defendants Forsyth and Klark should still be
dismissed for the additional reasons stated in this brief.

## I. <u>FACTS</u>

The underlying facts in this case are not in dispute.  Plaintiff is federal prison inmate Juan Davila-Bajana, Register Number 47580-053. At all times relevant to this action, he was serving a 20-year sentence for Conspiracy to Distribute Cocaine and Heroin, in violation of 21 U.S.C. §§ 841, 846.  His projected release date is November 11, 2016, via Good Conduct Time release.  Exhibit ("Ex.") 1 (Declaration of Martin Sapko) at ¶ 7, Attach. B.[2]  On or around April 1, 1998, Plaintiff was designated at the Federal Correctional Institution in McKean, Pennsylvania (FCI McKean), where he remains housed at this time.

While housed in FCI McKean, Plaintiff was assigned to work in the Federal Prison Industries, Inc. (FPI or trade name UNICOR) factory in FCI McKean.  Ex. 1 at ¶ 8, Attachs. C & D. This work assignment first occurred on or around March 23, 1999, and lasted only a short time before he was removed from the institution pursuant to a Writ of Habeas Corpus.  He returned in January 2000, and was reassigned to UNICOR, which was his work assignment for much of the time until his ultimate removal on or around March 31, 2003.  During the time he was assigned to UNICOR, Plaintiff performed primarily clerical and supply functions.  Ex. 1 at ¶¶ 8-14, Attachs. C-E.

On or around March 31, 2003, while conducting a routine search of the factory, Defendant English found an unauthorized piece of scrap material which could have been used to fashion a weapon.  This material was located in the vicinity of inmate Plaintiff's work station.

---

[2] It should be noted that each of the declarations in this case are submitted as Exhibits and all contain various attachments except Exhibit 2.  Thus, citation in this brief will first identify the appropriate Exhibit number and specific paragraph referenced.  Then, in many cases, additional citation to an attachment(s) to that Exhibit will follow.

Inmates are not permitted to store scrap pieces in or around their work stations. Ex. 2 (Declaration of David English) at ¶ 7.

At that time, three inmates were assigned to work stations in the vicinity of the unauthorized material. However, it was not possible to determine which inmate actually was responsible for possessing the unauthorized material. As a precautionary measure pending investigation, it was determined that all three inmates should be temporarily removed from the factory. Ex. 2 at ¶ 8; Ex. 3 (Declaration of Debora Forsyth) at ¶¶ 5-6.

Subsequently all three inmates were permanently removed from their work assignments pending the outcome of the investigation. This decision was based, in part, on the fact that this was the second time Plaintiff had been removed from his UNICOR work assignment as a result of his use of UNICOR materials to fashion weapons. In the previous incident, he was found in possession of sandpaper, which was not authorized at his work station. Ex. 3 at ¶¶ 6-7.

Records Reflect that in April 2003, subsequent to his removal from the factory, Plaintiff filed a Request for an Administrative Remedy. In that request, he alleged that he was removed from UNICOR because of his concerns with the air quality. This was the first time he ever raised such a complaint. Ex. 1 at ¶ 15; Ex. 4 (Declaration of Tim Holohan) at ¶ 7.

The Business Manager and Factory Manager met with Plaintiff, along with the institution's Executive Assistant, to discuss his request. At that time, it was explained to him that the reason for his removal was not based upon any concerns he may have raised relating to the air quality at the UNICOR prison factory. Ex. 1 at ¶ 16; Ex. 4 at ¶ 8.

3

Plaintiff was further instructed that if he wanted to be reassigned to his UNICOR work assignment, he would have to discuss the matter with the Superintendent of Industries.   There is no indication he ever did so.  Ex. 1 at ¶ 17; Ex. 3 at ¶ 9; Ex. 4 at ¶ 9.

Plaintiff now alleges that he was removed from his FPI work assignment as a result of his complaints relating to his exposure to Environmental Tobacco Smoke and Silica Dust.  In his Complaint, Plaintiff raises claims under the First Amendment, Eighth Amendment, and Federal Tort Claims Act ("FTCA") and requests a jury trial and monetary damages.  This Court has already dismissed the Eighth Amendment and FTCA claims.  Thus, only the First Amendment claim remains and, this claim should be dismissed for the reasons stated herein.

## II.  QUESTIONS PRESENTED

A.    Whether the Complaint must be dismissed in its entirety because Plaintiff has failed to state a claim for any Constitutional violation with respect to his removal from his UNICOR work assignment.

B.    Whether, based upon the underlying reasons for Plaintiff's removal from UNICOR and the fact that there is no evidence he complained about the air quality prior to his removal, all Defendants are entitled to protection from liability pursuant to the Doctrine of Qualified Immunity.

## III.  LEGAL ARGUMENT

### A.    Legal Standards

#### 1.    Rule 12(b)(6) - Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is the appropriate method to challenge the legal sufficiency of claims in a complaint.  Fed. R. Civ. P.

12(b)(6); Raines v. Haverford College, 849 F. Supp. 1009, 1010 (E.D. Pa. 1994). While courts considering motions to dismiss have a limited role, courts should grant such motions where it is clear that no relief could be granted under any set of facts that are consistent with the allegations of a complaint. Interfaith Community Org. v. AlliedSignal, Inc., 928 F. Supp. 1339, 1346 (D. N.J. 1996). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff has any chance of doing so. Id.; Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Although courts reviewing Rule 12(b)(6) motions generally consider only the allegations in the complaint, courts are also free to examine any exhibits attached thereto, other undisputed documents relied on by the plaintiff, other items appearing in the record of the case, and matters of public record. Raines, 849 F. Supp. at 1010; see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Indeed, if a court could not consider such documents, "'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which [he] relied.'" Interfaith Community Org., 928 F. Supp. at 1345 (D.N.J. 1996)(quoting Dykes v. Southeastern Pa. Trans. Auth., 68 F.3d 1564, 1567 n.3 (3d Cir. 1995)). Alternatively, where matters outside the pleadings are considered, the Court may treat the motion as one for summary judgment and dispose of it as provided in Rule 56. Fed.R.Civ.P. 12(b).

### 2.    Rule 56 - Summary Judgment

Summary judgment is appropriate when there is "no genuine issue as to any material fact and [if] the moving party is entitled to judgment as a mater of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986); Equimark

Comm. Fin. Co. v. C.I.T. Fin. Serv. Corp., 812 F.2d 141, 144 (3d Cir. 1987).  If evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.

Anderson, 477 U.S. at 249-51; Equimark, 812 F.2d at 144.  That is, where the record, taken as a

whole, could not lead a "rational trier of fact to find for the nonmoving party, summary judgment

is proper."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-86 (1986); see also

Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987).

To survive summary judgment, the non-moving party must actually come forward with

"affirmative evidence in order to defeat a properly supported motion for summary judgment."

Anderson, 477 U.S. at 248 (emphasis added).  Mere conjecture or speculation by the party

resisting a summary judgment motion cannot provide a basis upon which to deny the motion.

Quarles v. GMC (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985).

**B.**     **Plaintiff Has Presented No Evidence to Support His Claim That Staff at FCI McKean Removed Him From His UNICOR Work Assignment in Retaliation for Complaining About the Air Quality in the Factory**

Plaintiff alleges that staff at FCI McKean retaliated against him for complaining about the

air quality in the UNICOR factory.  Specifically, he claims that he was removed from his

UNICOR work assignment in March 2003, because, "Plaintiff have [sic] consistently

complained about the excessive Environmental Tobacco Smoke ("ETS") and silica dust in the

factory."  See Plaintiff's Complaint ¶ 8.

Plaintiff's conclusory statements, however, fail to state a prima facie case of retaliation.

The Supreme Court first recognized a cause of action for First Amendment retaliation in

Pickering v. Board of Education, 391 U.S. 563 (1968) and subsequently in Mt. Healthy City

School District Board of Education v. Doyle, 429 U.S. 274 (1977). The Third Circuit adopted

and expanded upon this retaliation law in Ambrose v. Township of Robinson, 303 F.3d 488, 493

(3rd Cir. 2002).

Based upon this precedent, the Third Circuit established that a prisoner bears the initial

burden of establishing a prima facie case of retaliation by demonstrating the following:

> 1) constitutionally protected conduct, 2) an adverse action by prison officials
> sufficient to deter a person of ordinary firmness from exercising his constitutional
> rights, and 3) a causal link between the exercise of his constitutional rights and the
> adverse action taken against him.

Mitchell v. Horn, 318 F.3d 523, 530 (3rd Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir.

2001).

Only if the inmate can demonstrate that his "exercise of a Constitutional right was a

substantial or motivating factor in the challenged decision," will the burden of proof shift to the

Defendants. Rauser, 241 F.3d at 334. The Defendants, however, may still prevail if they can

show that they, "would have made the same decisions absent the protected conduct for reasons

reasonably related to a legitimate penological interest." Id.

**1.    Plaintiff Was Not Engaging in Constitutionally Protected Conduct Prior to
His Removal from Unicor**

Plaintiff's initial burden is to show that he was engaged in constitutionally protected

conduct. Because he cannot overcome this initial threshold, his claim of retaliation is clearly

without merit, and the Complaint must be dismissed.

In retaliation cases such as this one, the protected right in question is the right to seek

redress for real or perceived grievances. It is well established that petitioning the court

constitutes such conduct which is protected by the First Amendment. Bounds v. Smith, 430 U.S.

817 (1969).  Likewise, this protection has been extended to inmates seeking redress through the

prison system's formal grievance procedures.  Milhouse v. Carlson, 652 F.2d 371, 374 (3rd Cir.

1981); Crawford-El v. Britton, 523 U.S. 574 at n.10 (1998).

Plaintiff, however, does not allege that he engaged in any of these protected activities

**prior** to his removal from UNICOR.   Instead, he alleges only that he informally complained

about the air quality in the UNICOR factory.  Based upon Plaintiff's complaint, which alleges

only that Plaintiff has complained (Complaint ¶ 12), Plaintiff clearly cannot satisfy his burden of

establishing that his conduct was somehow protected by the Constitution.  There is simply no

support in the law for the proposition that informal complaints somehow constitute conduct

which would be protected by the First Amendment.  Booth v. Pence, 141 Fed. Appx. 66, 68 (3rd

Cir. 2005).

Furthermore, even if informal complaints did constitute protected conduct of the type

which could give rise to a retaliation claim, Plaintiff has provided no evidence of any specific

complaints or instances in which he raised air quality issues prior to his removal from UNICOR.

In his complaint, he alleges only that he complained about the air quality, but gives no more

specific information about any complaints prior to his removal from UNICOR.  Complaint ¶ 12.

Likewise, in response to discovery questions, in which Defendants requested specific information

relating to any complaints Plaintiff made, he responded with a discussion of his Requests for

Administrative Remedy and conversations ensuing from that request.[3]  See Exhibit 5 (Plaintiff's

---

[3] It is well-settled and beyond dispute in this case, that Plaintiff commenced his first
Request for Administrative Remedy in April 2003.  See Defendants' Motion to Dismiss, Dkt.
No. 16; Amended Report and Recommendation, Dkt. No. 45.  He was removed from UNICOR
in March 2003. See Ex. 1 at ¶ 14; Ex. 2 at ¶¶ 7-9; Ex. 3 at ¶¶ 5-6; Ex. 4 at ¶ 6.

Answers/Responses to: Defendants' First Set of Interrogatories and Accompanying Requests for

Production of Documents).   Neither Plaintiff's Complaint, nor his discovery responses provide

any indication that he ever complained about the air quality in the factory prior to his removal.

This is supported by the Defendants' declarations, in which they indicate having no

conversations with Plaintiff regarding the air quality in the UNICOR factory prior to his removal

from the factory in March 2003.  See Ex. 1 at ¶¶ 15-21; Ex. 3 at ¶¶ 4, 8-11; Ex. 4 at ¶¶ 4-5, 11-

12; Ex. 2 at ¶¶ 4-6, 11-12.  As such, the retaliation claim must fail because Plaintiff's complaint

does not specifically identify any constitutionally protected conduct.  Booth, 141 Fed. Appx. at

68; Mitchell, 318 F.3d at 530; Rauser, 241 F.3d at 333.

    **2.**    **Plaintiff's Temporary Removal from His Unicor Work Assignment Is
Not Sufficiently Serious as to Deter the Exercise of Plaintiff's
Constitutional Rights**

To the extent Plaintiff's conduct was somehow protected by the constitution, he next

must show that the actions taken by prison officials were of sufficient severity to deter the

exercise of his constitutional rights.  Mitchell, 318 F.3d at 530; Rauser, 241 F.3d at 333.

Typically, this has been understood to refer to significantly serious deprivations.  Mitchell, 318

F.3d 530 (extended confinement in disciplinary segregation); Allah v. Sieverling, 229 F. 3d

220, 225 (3rd Cir. 2000)(same);  Rauser, 241 F.3d at 333 (denial of parole or transfer to another

institution).

Plaintiff's allegation that he was removed from his institution work assignment clearly

does not satisfy this standard.  Although his institution work assignment may have changed, this

is hardly unusual and had absolutely no deterrent effect on his ability to submit administrative

remedies, or otherwise submit formal grievances relating to the conditions in the factory.[4]  In

fact, to the contrary, Plaintiff commenced his Administrative Remedies after he was removed

from the UNICOR factory, and was clearly able to submit numerous requests for Administrative

Remedy, an Administrative Tort Claim, and this lawsuit, without impediment, subsequent to his

removal from UNICOR.  See Defendants' Motion to Dismiss, Dkt. No. 16; Amended Report and

Recommendation, Dkt. No. 45.  Therefore, it is clear that Defendants' actions did not inhibit

Plaintiff's exercise of his protected First Amendment rights.  Thomas A.W.T.  v. Independence

Township, 463 F.3d 285, 296 (3rd Cir. 2006); McKee v. Hart, 436 F.3d 165, 170 (3rd  Cir.2006);

Suppan v. Dadonna, 203 F.3d 228, 235 (3rd  Cir.2000).  See also Crawford-El v. Britton, 523

U.S. 574, 589  n.10 (1998) ("The reason why such retaliation offends the Constitution is that it

threatens to inhibit exercise of the protected right.").  As such, because Plaintiff was clearly not

deterred from exercising his Constitutional rights after his removal from his UNICOR work

assignment, Plaintiff fails to satisfy his burden of proof on this element as well.

### 3.    There Is Clearly No Nexus Between Plaintiff's Removal from His Unicor Work Assignment and Any Constitutionally Protected Conduct

Finally, in order to meet his burden, Plaintiff must be able to show that there is some

causal connection or nexus between his protected conduct (the filing of administrative remedies)

and the allegedly adverse actions of staff (removal from UNICOR).  Mitchell, 318 F.3d at 530;

Rauser, 241 F.3d at 333.

---

[4] It is also relevant to note that Plaintiff has alleged no adversity as a result of his removal from UNICOR.  Specifically, he does not allege that this action affected his release date, affected his conditions of confinement in any way, or affected his ability to pursue the administrative remedy program, pursue other formal avenues of grievance or redress, or pursue this action in court.

10

It is well established that Plaintiff has no right to any particular work assignment. James v. Quinlan, 866 F.2d 627, 629-30 (3rd cir. 1989)(Prisoners have no Constitutionally protected liberty or property interest in their prison work assignments); Bulger v. BOP, 65 F.3d 48, 50 (5th cir 1995)(Prisoner has no legitimate claim of entitlement to continuing UNICOR employment). As such, with no nexus between his removal from UNICOR and any Constitutionally protected conduct, there is simply no basis for asserting that any violation occurred.

Simply asserting in a conclusory statement that he was removed from UNICOR as a result of his complaining about ETS and silica dust, clearly does not serve to establish the requisite connection. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3rd. Cir. 1989); Rhodes v. Robinson, 612 F.2d 766, 772 (3rd Cir. 1979) (where an inmate was allegedly removed from institution work assignment in retaliation for inmate's legal activities, inmate must state claim for retaliation with more than conclusory statements); Castle v. Clymer, 15 F. Supp. 2d 640 (E.D. Pa. 1995); Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994).

As has been discussed, Plaintiff provides no evidence, either through his Complaint, or in any of his discovery responses, that he ever complained about the air quality in the UNICOR factory, in any manner, prior to his removal from UNICOR in March 2003. In fact, the first time he specifically mentions complaining about the air quality was in his April 8, 2003 Request for Administrative Remedy (which he subsequently withdrew). See Ex. 5; see also Defendants' Motion to Dismiss, Dkt. No. 16; Amended Report and Recommendation, Dkt. No. 45. It is well-settled, and beyond common sense, that a retaliation complaint cannot survive where the alleged retaliatory acts took place prior to the grievances that Plaintiff filed. Stanley v. Litscher, 213 F.3d 340, 343 (7th Cir. 2000). As such, Plaintiff cannot satisfy his burden of showing that his

11

grievances were a substantial or motivating factor in the decision to change his institution work assignments.  Mitchell, 318 F.3d at 530; Rauser, 241 F.3d at 333.

### 4.    There Was A Legitimate Penological Reason for Plaintiff's Removal From the UNICOR Factory.

Finally, even if Plaintiff could satisfy his burden and state a claim for retaliation, the burden would then shift to Defendants to show that the same actions would have been taken with respect to Plaintiff's institution work assignments, even in the absence of his requests for administrative remedy.  Rauser, 241 F.3d at 333.  In the past, however, the Third Circuit has recognized:

> that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials, who possess the necessary expertise. In Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that a prison regulation that impinges on the constitutional rights of an inmate is valid if it is "reasonably related to legitimate penological interests." In adopting the Mount Healthy framework, we do not discard the deferential standard articulated in Turner. Rather, we incorporate the balancing test announced in Turner into the Mount Healthy burden-shifting framework. This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.

Id.  Thus, Defendants can defeat a prima facie case of retaliation by showing that each instance of allegedly adverse conduct was rationally related to a legitimate penological interest, independent of Plaintiff's administrative remedies.  Id.

In the present case, there was clearly a legitimate penological interest in Plaintiff's removal from his work assignment, that is, the security and safe operation of the UNICOR factory and its personnel.  Records reflect that in late March 2003, a piece of unauthorized scrap material, which can be used to make weapons, was found in the vicinity of Plaintiff's work area

during a routine search.   Three inmates, including Plaintiff, worked in this area.  It was

impossible to determine which inmate the material belonged to, so all three were temporarily

removed from their work assignments.  See Ex. 1at ¶ 14; Ex. 2 at ¶¶ 7-9; Ex. 3 at ¶¶ 5-7; Ex. 4 at

¶ 6.  There was no other reason for Plaintiff's removal from his UNICOR work assignment, and

he was repeatedly told this through verbal communications and administrative remedies.

Additionally, he was instructed that if he wanted his work assignment returned, he should speak

with the Superintendent of Industries, Ms. Forsyth.  He did not do so, however.  No other

conversations or representations occurred between Plaintiff and staff regarding his return to

UNICOR.  The removal of Plaintiff was a completely reasonable decision and executed in order

to ensure the safety of the prison environment.  Accordingly, the prison had legitimate

penological interests in removing Plaintiff from his UNICOR position and there is no evidence

whatsoever that this removal was based upon retaliation.

**C.    Defendants Are Protected from Suit by the Doctrine of Qualified Immunity,
        Because Plaintiff's Clearly Established Constitutional Rights Were Not Violated**

        Summary judgment is also appropriate with regard to all of the named Defendants based

on the doctrine of qualified immunity.   A plaintiff may maintain an action for damages against a

federal employee personally, thereby subjecting him or her to personal responsibility for payment

of damages, for violating the plaintiff's constitutionally protected rights.  Davis v. Passman, 442

U.S. 228 (1979); Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403

U.S. 388, (1971).  The Supreme Court, however,  has held that federal executive officials, other

than those performing adjudicatory or prosecutorial functions, are entitled to qualified good faith

immunity from personal liability for civil damages. Saucier v. Katz, 533 U.S. 194 (2001);

Harlow v. Fitzgerald, 457 U.S. 800 (1982); Butz v. Economou, 438 U.S. 478 (1978).

"[G]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. See also Jeffers v. Gomez, 267 F.3d 895, 910-912(9th Cir. 2001). This is an "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511 (1985); see also Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). Therefore, once an individual raises qualified immunity in a Bivens action, the plaintiff cannot maintain the action against the federal official in his or her individual capacity unless the plaintiff can show that the defendant violated a clearly established Constitutional right. Siegart v. Gilley, 500 U.S. 226 (1991); Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993). This inquiry focuses on whether a reasonable official would have found the defendants' conduct to be illegal. Abdul-Akbar, 4 F.3d at 205; Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993), cert. denied, 114 S.Ct. 559 (1993). Normally, qualified immunity should be decided by the court before trial. Hunter, 502 U.S. at 227. See also Cunningham v. Gates, 229 F.3d 1271 (9th Cir. 2000). The Plaintiff has the burden of showing that the defendant federal employees violated his clearly established Constitutional rights. Zeigler v. Jackson, 716 F.2d 847 (11th Cir. 1983).

The Harlow rule on qualified immunity was further clarified by the Supreme Court in Anderson v. Creighton, 483 U.S. 635 (1987), as follows: "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, ... assessed in light of the legal rules that were "clearly established" at the time it was taken." Id. at 639 (citation to Harlow omitted). Both questions are to be decided by the court. This standard "gives ample room for

mistaken judgments by protecting all but the plainly incompetent or those who knowingly violated the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).  As long as a defendant government employee could reasonably have thought his actions were consistent with the rights he was alleged to have violated, said employee is entitled to qualified immunity.  Anderson, 483 U.S. at 638.

Government officials are not expected to be legal scholars like law professors.  Ward v. San Diego County, 791 F.2d 1329, 1332 (9th Cir.), cert. denied sub nom., Duffy v. Ward, 483 U.S. 1020 (1987).  The contours of the right allegedly violated must be sufficiently clear so that a reasonable government official would understand that his or her conduct violated the plaintiff's constitutional rights.  Officers who reasonably but mistakenly conclude their conduct was lawful are entitled to immunity.  Anderson, 483 U.S. at 641;  Hunter, 502 U.S. at 228-229.

Furthermore, the Supreme Court recently clarified the standard for the qualified immunity defense, making it much more difficult for Plaintiff to prevail.  Saucier v. Katz, 533 U.S. 194 (2001).  In Saucier, the Court held that the lower courts had been ignoring a significant threshold question.  Specifically, this Court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 200-01.   Only if Plaintiff's allegations make out a constitutional violation does the analysis move to the second sequential step, asking "whether the right in question was clearly established."  Id.  The Court went on to caution, however, that this second inquiry is not taken in a broad, general context, but must be "undertaken in light of the specific context of the case."  Id.  The reason for such an analysis is to avoid treating prison administrators as attorneys or holding them to an impossible standard.  As such:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Id. (internal citations omitted). Thus, if the law "did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982); Malley v. Briggs, 475 U.S. 335 (1986)).

In the present case, Plaintiff has not shown that Defendants violated any of his Constitutional rights. See discussion in Section B, supra. Therefore, he has failed to establish his burden of proof, as required by Saucier, Anderson and Harlow. Assuming for the sake of argument, however, that any of Plaintiff's allegations constituted violations of his Constitutional rights, none of those rights were so clearly established as to satisfy the second prong of the Saucier analysis. Accordingly, all of the Defendants are entitled to qualified immunity.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment, should be granted and Plaintiff's Complaint dismissed with prejudice.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney

s/Paul D. Kovac
PAUL D. KOVAC
Assistant United States Attorney
Western District of Pennsylvania
U.S. Post Office and Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7489

OF COUNSEL:      DOUGLAS S. GOLDRING
Assistant General Counsel
Federal Prison Industries (UNICOR)
400 First Street, NW, 8th Floor
Washington, DC 20534

Dated: December 7, 2006      Counsel for Defendants

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of December, 2006, I electronically filed and mailed via first-class mail a true and correct copy of **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT** to the following:

> Mr. Juan Davila-Bajana
> Plaintiff <u>Pro</u> <u>Se</u>
> Reg. No. 47580-053
> FCI-McKean
> P.O. Box 8000
> Bradford, PA 16701

<u>s/Paul D. Kovac</u>
PAUL D. KOVAC
Assistant U.S. Attorney
