## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUAN DAVILA-BAJANA,
               PLAINTIFF

                                       Civil Action No. 04-253E

v.

                                       Judge McLaughlin
                                       Magistrate Judge Baxter

TIM HOLOHAN, ET AL.,
               DEFENDANTS

### DECLARATION OF DAVID ENGLISH, WOODWORK SUPERVISOR

1.    I am a Woodwork Supervisor for the Federal Prison Industries, Inc (FPI or trade name UNICOR) factory at the Federal Correctional Institution (FCI), McKean, Pa. I have held this position since July 12, 1992. Over the course of the past 14 years, I have rotated between the day shift and the evening shift. At all times relevant to this action, however, I was assigned to the evening shift.

2.    As a Woodwork Supervisor at FCI McKean, I am responsible for all facets of the factory operation during my shift. This includes, among other areas: production, staff conduct, and inmates conduct. Additionally, I am responsible for the ensuring the safety and secure operation of the factory.

3.    I am aware that inmate Juan Davila-Bajana, Register Number 47580-053, filed a civil rights action, in which he alleges that I retaliated against him by removing him from his UNICOR work assignment after he allegedly complained about the quality of the air in the UNICOR factory.

4.    Inmate Davila-Bajana was not directly assigned to my work crew. As such, I did not have regular daily interaction with him. To the best of my recollection, inmate Davila-Bajana never complained to me about the quality of the air in UNICOR, environmental tobacco smoke, silica dust in the factory, or any other issue, at any time prior to his removal from UNICOR. In fact, I do not specifically recall speaking directly with inmate Davila-Bajana about any concerns during his tenure in the UNICOR factory.

5.    If inmate Davila-Bajana, or any other inmate, for that matter, had complained to me about the quality of the air in the UNICOR factory, I would have referred him to speak with our safety manager. Additionally, I would have followed up on the concern by speaking with the Safety Manager, as well as my supervisor, the Factory Manager. I have no specific recollection of any inmate complaining to me about the air quality in the factory.

6.    It is my further recollection that, at all times relevant to this action, inmate Davila-Bajana was a regular smoker (since that time FCI McKean, like all Bureau of Prisons facilities has become a non-smoking institution). At that time, inmates were permitted to smoke in the break room during their regularly scheduled breaks. I would frequently observe him in the break room smoking with the other inmates. Smoking was never permitted in any area in the factory outside of the break room, or at any time other than during regularly scheduled breaks.

7.    On or around March 31, 2003, while conducting a routine search of the factory, another foreman and I found an unauthorized piece of scrap material which

could have been used to fashion a weapon. This material was located in the vicinity of inmate Davila-Bajana's work station. Inmates are not permitted to store scrap pieces in or around their work stations.

8.    At that time, three inmates were assigned to work stations in the vicinity of the piece of material we found. It was not possible to determine which inmate the pieces of material belonged to. I discussed the matter with the shift lieutenant, and we agreed that all three inmates should be temporarily removed from the factory. I immediately informed the three inmates (one of whom was inmate Davila-Bajana) that they should return to their housing units for the rest of their shift.

9.    I subsequently learned that all three inmates were permanently removed from their work assignments pending the outcome of an investigation. I had no involvement in this decision, and I did not talk to anyone at that time regarding the decision to remove these inmates from their work assignments. My sole involvement was to remove the three inmates for the remainder of that night's shift.

10.   I do not specifically recall any further contact with inmate Davila-Bajana. It is possible that he may have come to the UNICOR factory entrance to inquire about his work assignment. If he had done so, however, I would have told him to speak with the Factory Manager and the SOI.

11.   At no time did I ever promise to inmate Davila-Bajana that I would return him to a work assignment in UNICOR. Nor did I ever tell him that I would do so in

exchange for withdrawing his Request for Administrative Remedy. In fact, I was not even aware that inmate Davila-Bajana had filed any Requests for Administrative Remedy until after this lawsuit was filed.

12.    Furthermore, to the best of my recollection, inmate Davila-Bajana did not report any work-related injuries or illnesses to me, nor did he request any special safety equipment that he could use at his inmate work assignment.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.


_David English_                    11-17-06
David English                      Date
Woodwork Supervisor
FCI McKean