IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUAN DAVILA-BAJANA,
    PLAINTIFF

Civil Action No. 04-253E

v.

Judge McLaughlin
Magistrate Judge Baxter

TIM HOLOHAN, ET AL.,
    DEFENDANTS

### DECLARATION OF DEBORA FORSYTH, ASSOCIATE WARDEN

1. I am the Associate Warden (AW) over Industries and Education (I&E) at the Federal Correctional Institution (FCI), Jessup, Georgia. Prior to this, from May 9, 1999, until approximately June 3, 2003, I was the Superintendent of Industries (SOI) at FCI McKean, Pennsylvania.

2. As the SOI at FCI McKean, my responsibilities included both oversight of the day-to-day operations and long term policy decisions affecting the Federal Prison Industries, Inc. (FPI or trade name UNICOR) operation at FCI McKean.

3. I am aware that inmate Juan Davila-Bajana, Register Number 47580-053, filed a civil rights action, in which he alleges that I retaliated against him by removing him from his UNICOR work assignment after he allegedly complained about the quality of the air in the UNICOR factory.

4. As the SOI, I did not have regular daily interaction with every single inmate assigned to UNICOR. I did, however, walk the floor of the factory daily, and generally made myself

available to any inmates with complaints or concerns about the factory. During this time, I had the opportunity to speak with hundreds of inmates on a variety of different issues relating to the factory. To the best of my recollection, however, inmate Davila-Bajana never complained to me about the quality of the air in UNICOR, environmental tobacco smoke, silica dust in the factory, or any other issue, at any time prior to his removal from UNICOR. In fact, I do not specifically recall speaking directly with inmate Davila-Bajana about any concerns during his tenure in the UNICOR factory.

5. On or around March 31, 2003, a piece of sharpened metal was found in the vicinity of inmate Davila-Bajana's work station. The sharpened metal was not an authorized tool, and did not constitute an authorized use of UNICOR materials. As such, it was considered to be contraband, and potentially a weapon. At that time, there were three inmates assigned to that work station, and it was not readily apparent which inmate had fashioned the sharpened piece of metal.

6. As such, since it was impossible to immediately determine which inmate had fashioned the weapon out of a piece of metal, I exercised the discretion afforded to my by BOP Program Statement 8120.02, Inmate Work Programs, and removed all three inmates from their work assignments in order to ensure the safety and secure operation of the factory. Attachment A is a true and correct copy of BOP Program Statement 8120.02, Inmate Work Programs. Attachment B is a true and correct copy of inmate Davila-Bajana's work history.

7. This was the second time inmate Davila-Bajana had been removed from his UNICOR work assignment as a result of his use of UNICOR materials to fashion weapons. In the previous incident, he was found in possession of sandpaper, which was not authorized at

his work station. Attachment C is a true and correct copy of inmate Davila-Bajana's disciplinary history record. See also Attachment B.

8. Inmate Davila-Bajana never questioned his removal from UNICOR with me directly. If he had sought to return to his work assignment, I would have told him the same thing I tell all inmates who have been removed from UNICOR. Specifically, I require 90 days of clear conduct (after either removal from UNICOR or from the Special Housing Unit (SHU) whichever is later) before I will consider hiring a removed inmate back into UNICOR. After that, if he requested a return to UNICOR, I would discuss the matter with his foreman and determined whether his return would be a benefit or a detriment to the safe and secure operation of the factory.

9. In fact, inmate Davila-Bajana made no effort to speak with me about any subject matter, including the reasons for his removal. If he had done so, I would have explained that his removal from UNICOR was based solely on the sharpened piece of metal which was found in the vicinity of his work station.

11. Furthermore, to the best of my recollection, inmate Davila-Bajana did not report any work-related injuries or illnesses to me, nor did he request any special safety equipment that he could use at his inmate work assignment.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

*(signature)*     11/8/06
Deborah Forsyth     Date
Associate Warden
FCI Jessup