IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUAN DAVILA-BAJANA,
       PLAINTIFF

v.

TIM HOLOHAN, ET AL.,
       DEFENDANTS

Civil Action No. 04-253E

Judge McLaughlin
Magistrate Judge Baxter

## DECLARATION OF TIM HOLOHAN, BUSINESS MANAGER

1. I am the Business Manager for the Federal Prison Industries, Inc (FPI or trade name UNICOR) factory at the Federal Correctional Institution (FCI), McKean, Pa. I have held this position since December 1997. Prior to my current assignment, I held positions of increasing responsibility within both FPI and the Bureau of Prisons since February 1989. Additionally, from June 2003 through August 2004, I was the Acting Superintendent of Industries, following Ms. Forsyth's transfer to FCI Jessup, Ga.

2. As the Business Manager at FCI McKean, my responsibilities include oversight of the business office in the FPI factory at FCI Mckean. I was responsible for the accuracy of the financial records and the data entered into the corporate operating system. Additionally, I supervised the day-to-day operation of the business office, including the accounting, contracting, and warehouse disciplines.

3. I am aware that inmate Juan Davila-Bajana, Register Number 47580-053, filed a civil

rights action, in which he alleges that I retaliated against him by removing him from his UNICOR work assignment after he allegedly complained about the quality of the air in the UNICOR factory.

4. As the Business Manager, I did not have regular daily interaction with many of the inmates assigned to UNICOR. To the best of my recollection, inmate Davila-Bajana never complained to me about the quality of the air in UNICOR, environmental tobacco smoke, silica dust in the factory, or any other issue, at any time prior to his removal from UNICOR. In fact, I do not specifically recall speaking directly with inmate Davila-Bajana about any concerns during his tenure in the UNICOR factory.

5. If inmate Davila-Bajana, or any other inmate, for that matter, had complained to me about the quality of the air in the UNICOR factory, I would have referred him to the 2001 and, subsequently, the 2003 air quality inspections, which showed that the air quality in the UNICOR factory was well within the permissible limits established by Occupational Safety and Health Administration (OSHA). **Attachment A is a true and correct copy of the 2001 air quality test results received from Microbac Laboratories. Attachment B is a true and correct copy of the 2003 air quality test results received from OSHA.**

6. I am aware that inmate Davila-Bajana was removed from the factory on or around March 31, 2003. I was not personally involved in the decision to remove inmate Davila-Bajana from the factory. I have no personal recollection as to the reasons for his removal, and

did not discuss it with him or anyone else, at that time.

7. I next spoke with inmate Davila-Bajana in April 2003, after he filed a Request for an Administrative Remedy. In that request, he alleged that he was removed from UNICOR because of his concerns with the air quality.

8. The Factory Manager and I met with inmate Davila-Bajana, along with the institution's Executive Assistant, to discuss his request. At that time, we explained to him that the reason for his removal was not based upon any concerns he may have raised.

9. Inmate Davila-Bajana was further instructed that if he wanted to be reassigned to his UNICOR work assignment, he would have to discuss the matter with the Superintendent of Industries. I have no personal knowledge as to whether inmate Davila-Bajana actually spoke with the Superintendent of Industries at that time. I do know, however, that he did not return to his UNICOR work assignment.

10. The only other conversation I had with inmate Davila-Bajana occurred in the summer of 2004. At that time, while I was the Acting Superintendent of Industries, he asked whether he could be reinstated to his UNICOR work assignment. At that time, based upon the fact that he had been removed from the factory twice, I told him that I believed his presence threatened the security and safe operation of the factory. As such, in accordance with Program Statement 8120.02, <u>FPI Work Programs For Inmates</u>, I refused to reinstate him. **Attachment C is a true and correct copy of Program Statement**

**8120.02, <u>FPI Work Programs for Inmates</u>.**

11. At no time did I ever promise inmate Davila-Bajana that I would return him to a work assignment in UNICOR. Particularly, I never told him that I would do so in exchange for withdrawing his Request for Administrative Remedy. That decision was strictly a voluntary decision, made by inmate Davila-Bajana, following our meeting to discuss the reasons for his removal from the factory.

12. Furthermore, to the best of my recollection, inmate Davila-Bajana did not report any work-related injuries or illnesses to me, nor did he request any special safety equipment that he could use at his inmate work assignment.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

_____          11/16/06
Tim Holohan                        Date
Business Manager
FCI McKean