UNICOR

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUAN DAVILA-BAJANA, | : |
| PLAINTIFF, | : |
| -VS- | : |
| TIM HOLOHAN, ET AL., | :   CIVIL ACTION #04-253E |
| DEFENDANTS. | :   JUDGE: Sean J. McLaughlin |
| | :   MAGISTRATE Susan P. Baxter |

## PLAINTIFFS ANSWERS/RESPONSES TO:

### DEFENDANT'S FIRST SET OF INTERROGATORIES AND

### ACCOMPANYING REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW COMES Juan Davila-Bajana, pro se (Plaintiff); and hereby respectfully submits his above referenced Answers/Responses to the respective materials.

As a general matter, Plaintiff does not have any additional materials/documents that he has referenced in any of his previous pleadings and/or these Answers/Responses than those that have already been filed as Exhibits to same. Though Plaintiff is presently revieing all the materials that he has in order to ascertain if there is anything that falls within the scope of any of the Defendants' Requests.

Moreover, Plaintiff has also filed/submitted his own set of Document Requests and Discovery Requests and Interrogatories. This is so as he believes that the materials needed to prove his allegations are within the BOP's files. So if Plaintiff

receives any materials/documents that he feels are identifiable as such; he will promptly notify the Defendants of same.

Additionally, the Answers/Responses to the Defendants' Interrogatories are on the following pages and are on the original page numbers as set forth in their Request. So this page 2 is the page before the first page of Defendants Interrogatories; which start on page 7.

### INTERROGATORY NO. 1

Please state the individual(s) to whom you complainted regarding the air quality, specifically the Environmental Tobacco Smoke and silica dust, that you allege was present at your prison factory job. Please also state the date(s) that each complaint was made and how each complaint was made (i.e., oral or writing)..

**ANSWER:**   1) I filed an Administrative Remedy specifically on the issue of Environmental Tobacco Smoke while employeed at the UNICOR factory at FCI McKean. This was done through my Unit Team and the Warden (Lamanna) at FCI McKean.

2) I also complained to the Unicor Factory Manager (Defendant Sapko), my Foreman          , the Supervisor of Industries (Defendant Forysth), the Safety Manager (Defendant Housler) and others. These complaints were verbally done, many times at the behest of the individuals who they were made to -- as they knew that I was filing my Remedies at the prison and made the effort to come to me to discuss this. I am not exactly able to give the exact dates at this time, but I am trying to go over my notes and refresh my memory to get at least an approximation for your use. But, at a minimum, Defendants Housler, Sapko, and Klark where present when the withdrawal of the Administrative Remedy took place; so that is a date which I will be able to provide.

3) I intend to supplement this Answer as soon as I can, but am submitting this as a preliminary Answer so that you can start Trial preparation and also to assist you in the answering of my Interrogatories and to facilitate the response to my Discovery Request(s).

7

### INTERROGATORY NO. 2

Please state the specific nature of each complaint (<u>i.e.</u> the substance of your actual complaint) and what, if any, response was provided by BOP or UNICOR officials.

**ANSWER:**  1) I complained that I was experiencing difficulty breathing and that the conditions at the prison factory were aggravating my other health ailments. Such as my asthma and other respiratory conditions. The initial "response" from the staff was dismissal out-of-hand of my complaint. Some of the Defendants merely stated that "I work here and it doesn't bother me."

At other times I was told to go to health services to see if there was anything wrong with me. Health Services simply would tell me that I was aggravating my conditions by working in the factory and would most likely have tried to stop me from working there. But the issue here is that the factory should not have been in such a condition as it aggravated me with Environmental Tobacco Smoke and/or silica dust.

2) I believe the written grievance speaks for its self and the issue there is that I was willing to forego the Complaint of Second Hand Smoke and the silica dust in order to secure my job back at the factory. And after a month or so of repeatedly going to Defendants Holohan and Forysth (as well as others), about being returned to the UNICOR; I finally realized that they were doing nothing more than trying to stop me from filing Administrative Remedies and then deny me access to the Courts. So I filed my second grievance on the retaliation of dismissing me from UNICOR because I was grieving the Tobacco Smoke and silica dust.

8

## INTERROGATORY NO. 3

Please state all violations, either written or oral reprimands, that you have received since beginning your factory job with UNICOR.

**ANSWER:** I do not recall any incident that would be considered a "violation(s)" that resulted in any sort of reprimand, either written or oral.

### INTERROGATORY NO. 4

Please state how each named defendant allegedly retaliated against you and the specific damage amount claimed against each individual.

**ANSWER:** <u>Defendant English:</u> This Defendant retaliated against me by dismissing me from my UNICOR evening shift, along with inmates Aponte and Cortez, sending us back to our Unit and informing us that "you're all still lucky to have a job." This was on March 12, 2003, at 4:30 p.m. He also told us to "watch the call-out, you'll be on it for the day shift at UNICOR." (This never happened and I had to file my retaliation grievance). I believe that the reason for this dismissal was simply because of the grievance by me against the smoke and dust; as I was supposed to be moved to the day shift because of less environmental smoke. **DAMAGES:** Punitive in sum of $100,000.00 from this Defendant in his individual <u>and</u> professional capacity <u>and</u> compensatory damages of $20,000.00 for lost wages from my UNICOR job and reinstatement to the UNICOR factory at a grade 1.

<u>Defendant Housler:</u> This Defendant failed to take corrective action to assure that the conditions at the factory were safe and complied with the relevant standards applicable. He also was present when the promisses were made to me that I would be restored to work at the factory in return for the withdrawal of my grievance. The false promisses were for no reason than to get me to withdraw my grievance and injured me by denying me access to the Courts. He did these acts simply because I filed the Administrative Remedy and was going to expose the short-

## INTERROGATORY NO. 4 (continued)

comings of his not making the UNICOR factory safe. So his promisses and "lending-support" to the promise of my being returned to the factory swayed me to withdraw my grievance on the tobacco smoke issue. This was nothing more than retaliation and he was personally involved as he was standing right there when the promises were made. DAMAGES: Compensatory damages of $20,000.00 for lost wages and $50,000.00 for pain and suffering from the conditions at the factory; and Punitive Damages of $100,000.00 for the retaliation and coercing me to withdraw my grievance. (Individual and professional capacity).

Defendant Sapko: This Defendant was also responsible for the safety of the factory and was concerned with my grievance about the smoke and dust. At the time of my withdraw of my grievance on the smoke and dust he was there and supported the proposition that I would be returned to my prison factory job upon the withdrawal of my grievance. The only reason that he lent his support to this was that he would be partially responsible for the unsafe conditions that were present at the UNICOR factory at McKean. So this coercion was simply in retaliation for my filing my grievance against the smoke and dust in the factory. DAMAGES: Compensatory damages of $20,000.00 for lost wages and $50,000.00 for pain and suffering from the conditions at the factory; and Punitive Damages of $100,000.00 for the retaliation and coercing me to withdraw my grievance. (Individual and professional capacity).

Defendant Klark: This Defendant was there when I was coerced into withdrawing my grievance on the smoke and dust. He knew that his presence would support the contention that I was to be returned to the factory upon the withdrawal of my grievance.

10-A

## INTERROGATORY NO. 4 (continued)

There was no other reason for Defendant Klark, Camp Administrator, to be present other than to try to make a "show-of-force" to have my withdraw my grievance. DAMAGES: In his professional and individual capacity, Compensatory Damages of $20,000.00 for lost wages and $50,000.00 in pain and suffering from the conditions at the factory; and Punitive Damages of $100,000.00 for retaliation and coercing me to withdraw my grievance.

Defendant Holohan: This Defendant was one of the individuals that I continued to talk to about when I would be returned to my factory job. He cotinueally told me to "see me next week", but never had me placed back in the factory. He would not restore me to my job, but finally told me (after weeks of "run-around") that "someone doesn't like you there. Again the delay was for no reason than to attempt to deny me access to the Courts and to retaliate against me for the previously filed grievance. DAMAGES: In his individual and professional capacity, Compensatory Damages of $20,000.00 for lost wages and $50,000.00 for pain and suffering for the conditions at the factory; and Punitive Damages of $100,000.00 for the retaliation.

Defendant Forysth: This Defendant was the second individual who I spoke ot about getting placed back in the factory. Again I continually got the "run-around" of "see me next week". This Defendant could have easily had me returned to my job; but would not do so simply to try to deny me access to the Courts and to retaliate against me for filing the previous grievance. DAMAGES: In her Individual and Professional capacity, Compensatory Damages of $20,000.00 for lost wages and $50,000.00 for pain and suffering because of factory conditions; and Punitive Damages of $100,000.00 for retaliation.

10-B

### INTERROGATORY NO. 5

Please state in detail how you were allegedly coerced by Defendants Sapko, Holohon, Houseler, and Klark into withdrawing your administrative claim.

**ANSWER:** I was directed to meet the above named Defendants and entered the room and looked around. I was surprised to see so many of the UNICOR "brass" in one room and felt a little intimidated by the presence of them. I do not recall the exact words spoke by each of the Defendants; but they pretty much all said the same thing in one form or another.

The sum of our discussion is/was that they were distressed with the fact that I had filed a grievance against the environmental conditions of the factory at McKean. In substance they were also upset because I filed the grievance after I had been dismissed from UNICOR. They were not overly friendly nor cordial with me during this meeting; and it was apparent to me that they were not interested in having me leave there until I complied with their "request(s)". They were extremely forceful in the way that they explained to me that this was "not a good way to get your job back."

I did not appreciate that and could tell that they were telling me in no uncertain terms that the grievance would continue to cause me trouble. Defendant          , was the first one to "suggest" that I withdraw my grievance and then I could be reinstated to the factory. After a few minutes of thought I decided that while I did suffer while I was at work; if I could get placed on the day-shift maybe the reduced smoke and dust would be livable.

11

## INTERROGATORY NO. 5 (continued)

Defendant _____, explained to me that if I would sign the memorandum withdrawing the Administrative Remedy that they would have me reinstated to UNICOR and that I would be placed on the day-shift. While this all was taking place there was a great deal of body language that was telling me that this was not really a choice -- but more like an order from them for me to withdraw the grievance.

I was very uncomfortable in the room and felt that I would be experiencing a great deal of problems from them and/or their fellow BOP employees. And since I really wanted the job and enjoyed working and receiving the money to reduce the stain on my family and friends; I decided that the least problems would be for me to go back to UNICOR.

Besides, I knew that the fact that I had filed a grievance, and that other inmates had also; would most likely be the cause of the staff taking corrective measures in order to correct the environmental smoke and/or silica dust. So the problem was most likely going to be addressed anyhow, so it would have served no further reason to continue the remedy process. Though I did not know that they were not serious about giving me my job back at UNICOR. Though I did not feel I had a choice.

As noted in the Answer(s) to other Interrogatories; as I am able to remember more I will promptly forward same to you in writing for your file(s).

11-A

## INTERROGATORY NO. 6

Please list all the witnesses that you intend on calling at trial to prove your case and the substance of each witness's testimony.

**ANSWER**: REFUSE. PLAINTIFF IS STILL COMPLYING THIS INFORMATION AND WILL PROVIDE SAME IN COMPLIANCE WITH JUDGE BAXTER'S CASE MANAGEMENT ORDER OF AUGUST 23, 2006. TO WIT, ¶ 3 OF SAID ORDER.

## DECLARATION

I, Juan Davila-Bajana, hereby declare and affirm, under the penalty of perjury pursuant to 28 U.S.C. § 1746(2), that the foregoing pleading is true an correct to the best of my knowledge and recollection, this 7th day of November, 2006.

*[signature]*
Juan Davila-Bajana, Pro Se
Fed. Reg. No. 47580-052
FCI McKean
P.O. Box 8000
Bradford, PA 16701

## CERTIFICATE OF SERVICE

I, Juan Davila-Bajana, hereby certify that I served true and correct Originals of the foregoing pleading and accompanying Declaration, by first-class postage prepaid surrender to prisons officials, this 7th day of November, 2006, to:

1. Clerk of the Court
   U.S.D.C. for W.D. PA
   P.O. Box 1820
   Erie, PA 16501

2. Paul D. Kovac, AUSA
   U.S. Attorney's Office
   700 Grants St., STe. 400
   Pittsburgh, PA 15219

3. Douglas S. Goldring, AGC
   Fed. Prison Ind. (UNICOR)
   400 First St., N.W., 8th Fl.
   Washington, DC 20534

*[signature]*
Juan Davila-Bajana, Pro Se
Fed. Reg. No. 47580-052
FCI McKean
P.O. Box 8000
Bradford, PA 16701