IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUAN DAVILA-BAJANA,            :

       PLAINTIFF,              :
                       :
                       :
                       :
      -VS-                    :
                       :
                       :

TIM HOLOHAN, ET AL.,           :        CIVIL ACTION NO. 04-253(ERIE)
                       :
      DEFENDANTS.             :        JUDGE: SEAN J. MCLAUGHLIN
                       :
                       :        MAGISTRATE JUDGE: Susan P. Baxter
                       :

FILED

'07 APR 18 AM 11:30

CLERK
U.S. DISTRICT COURT

PLAINTIFF'S NARRATIVE WRITTEN STATEMENT

OF FACTS FOR TRIAL TO BE ENTERED BY ORAL AND DOCUMENTARY EVIDENCE

WITH WITNESS LIST AND EXHIBIT LIST ATTACHED

1. NOW COMES Juan Davila-Bajana, Pro Se (Plaintiff); and hereby respectfully submits his above Titled Plaintiff's Narrative Statement pursuant to Magistrate Judge Susan Baxter's (Judge Baxter) Case Management Order of August 23rd, 2006.  This Statement is supplied to the Court as an Exhibit to Plaintiff's recently filed Show of Cause out-of-time; but as set forth in the body of the Show of Cause, Plaintiff asserts that no party has been prejudiced and therefore the Court is well within its discretion to allow Plaintiff's Narrative at this time.

PROCEDURAL BACKGROUND

2.    Plaintiff has filed the instant Civil Action in this Court seeking redress for the Defendants, all Federal Bureau

of Prisons (BOP) employees, violation of his First Amendment
Right to freedom of speech and to seek redress in Court.  It
it well settled that a BOP employee may not take a retaliatory
action against a prisoner simply because he complains of, or
reports on, unsafe and unhealthy conditions, at his prison job.

3.    In fact, even if a BOP employee can state a justifiable
reason for the action(s); it may still constitute a cause of
action in federal court if the action(s) are done for simple
retaliation.  In plain words, if the act(s) can be shown to
have been motivated by personal gain, and not because of a penalogical
interests, the Defendant(s) are nonetheless liable to the Plaintiff.

4.    At this time the Plaintiff has survived one Motion
to Dismiss, or in the alternative, Summary Judgement (<u>First</u>
Summary Judgement); same having been directed towards the Claims
that were set forth in the Original Complaint.  And this Court
has let stand for Trial the Second Claim of Retaliation and
Discovery has been completed with respect to same.

5.    Said Discovery including Interrogatories from both
the Defendants and Plaintiff, along with the Answers to same,
having been provided to the opposing party.  Also, the Defendants
have provided the Plaintiff with an "Answer" to his Complaint.

6.    In the interim, the Defendants have filed a Motion
to Dismiss, or in the alternative, Summary Judgement (<u>Second</u>
Summary Judgement).  This Motion is still pending before the
Court and Plaintiff deems that same will be Denied simply because
the Defendants own Exhibits to same clearly show that it "fails-on
-its-face".  Notwithstanding that the "Defense" that is being
proffered is not "in line" with the Claim(s) and/or the Answer

as provided by the Defendants.

7.    Moreover, Plaintiff will state again for the Record
that he is presently researching for the expected upcoming Discovery
Order from the Court.  This is premised upon the fact that the
Defendants have raised a novel and absolutely different defense
in their Second Summary Judgement Motion -- and as argued in
the Response to same, Plaintiff now deems that if he must refute
this at Trial he will have need of further Discovery.


NARRATIVE STATEMENT OF FACTS TO BE OFFERED AT TRIAL

8.    At the time of the underlying employment at his Federal
Prison Industries (FPI) (UNICOR) job; Plaintiff worked at the
factory in Federal Correctional Institute McKean (FCI McKean).
Plaintiff held a number of jobs at the factory during his tenure
there and had worked there for some ____ months at the time
of the conditions that were present which resulted in his finally
having filed the Grievance on the conditions.

9.    Prior to Plaintiff having filed his Grievance on the
conditions at the Factory, there were other inmates who had
filed grievances on the conditions -- both the second hand smoke
and silica dust.  In fact, this was a discussion of frequent
occurrence at the Factory and was talked about at the Factory
during breaks and at other times among the inmate workers.  And
I personally engaged in the discussion of the conditions and
what should be done about them and who should be told.

10.    Because of this I was in the company of some of the
other inmates who filed grievances on the Factory conditions
throughout the Factory.  So I was seen in their company by numerous
staff, both foreman and other administrative staff while they

3

were walking the floor.  This is, upon information and belief, with respect to all the Defendants, as well as the other staff at the prison who made rounds at the UNICOR Factory.

11.    This all took place before I was asked to leave the factory by Defendant English one evening on ___/___/___.  At that time Defendant English did not explain as to why I, and two other inmates, were asked to return to our housing units. But he only stated that "your luck to still have a job.  Watch the call-out for your change to day shift."

12.    The next day I was called to the Captain's Office and was questioned about a piece of scrap plastic that was alleged to have been found in the "general vicinity of my work area". This was not within my personal work area, and in fact was not directly in any inmate's work area.  But the other inmates, _____ and _____, who were also asked to return to the housing unit and were also questioned about this piece of plastic.

13.    None of us were placed under investigation nor did we receive an incident report for violation of any BOP policy. And, in fact, inmate _____, filed a Grievance on his release from UNICOR without any reason or incident report and was given his job back.  The other inmate, _____, was close to being released and did not bother to try to get his UNICOR job back.

14.    I personally talked to Defendant Forsyth at the dining hall during the noon meal and she continually told me that she would "look into it".  This went on for a few weeks until she finally left the institution for another job at another prison.

But she did not specifically tell me that I had not chance of getting my job back.

15.    But in the mean time while I was told to "watch the call-out" for my transfer to the day-shift, which never materialized, I filed a Grievance against the Defendants at the factory for retaliation. That is the Grievance which I exhausted and filed the underlying Complaint on for this action.  And at this time the Claim which has survived the Summary Judgement Motion by the Defendants is the Claim of Retaliation.

16.    At the time I filed my Grievance I was under the impression and understanding that I had been removed from UNICOR for complaining of the Factory conditions.  Even though I did not actually file the Grievance before I was told to go back to the housing unit by Defendant English; I had been seen by him and the other Defendants with the inmates who filed grievances on the Factory conditions.

17.    So it was understood by all concerned that I too would be filing a Grievance on the conditions at the factory.  And I felt that the reason that I was asked to leave the Factory that night was simply so that they could have me removed from UNICOR before I actually filed my Grievance.  And that this would be reason for them to use against me in response to my Grievance and in court -- I was not working at UNICOR, so the Factory conditions are not my concern.

18.    And as I continued to seek return to my UNICOR Factory job, I began to understand that I was now going to have trouble simply because of the Grievance.  This was made known to me by Defendant Housler at the time that I agreed to withdraw my original Grievance on the second hand smoke and silica dust.

19.    But even more telling was after Defendant Forsyth left
McKean and Defendant Holohan became acting Superintendent of
Industries (SOI) at FCI McKean UNICOR.  He told me in striaght
language that "someone doesn't like you and your not going to
get your job back".  Yet the same Defendant Sapko, who was present
when the Original Grievance on the Factory conditions was withdrawn
in front of Safety Manager (Defendant) Housler, has now offered
to place me in the UNICOR factory on two different occasions.

20.    Unfortunately, Defendant Sapko will not agree to give
me my back pay and return me to my previous Pay Grade and restore
my longevity (seniority).  So I would gain nothing by this concession,
and in fact, if I return under his present conditions -- I would
not even be able to obtain my original Pay Grade at all!!  Defendant
Sapko has now informed me that I would be limited to a Pay Grade
of Level 3, below my previous Level 2 (and actually Grade One
because I was eligible for it the month after I was released
from UNICOR).  Which I would deem to be further retaliation.

21.    During the time after my release from UNICOR and when
I was trying to return to the factory, Defendant Klark was present
at the time that Defendant Housler and Sapko persuaded me to
withdraw my Grievance on the Factory conditions.  I believe
that he was involved in my not being returned to UNICOR and
that because of his position as the Federal Prison Camp McKean
UNICOR Factory (FPI); he was able to convince the staff at the
FCI that I should not be given my job back.

22.    Of real importance to all this is that at no time during
my interaction with the Defendants, did any of them tell me
that I was removed from UNICOR because of the piece of scrap

6

plastic. Though this was understood to be the reason that I
was initially removed from UNICOR -- it was never cited to me
as the reason for my having been permanently removed from my
job. And at no time was I given a Memorandum as Policy requires
to be done when the SOI at UNICOR makes such a determination
to have me refused for employment -- as now alleged by Defendant
Forsyth in her Declaration to the Court in support of the Defendants'
Second Motion for Summary Judgement.

23.    Also, now pursuant to the Discovery process, I have
receive from the Defendants copies of Occupational Safety and
Health Administration (OSHA) reports of the conditions of the
Factory at the time period during which my Original Grievance
filed. And they conclusively show that the Factory was reviewed
by OSHA's personnel and found to be in violation of various
work place standards. Some three dozen violations being listed
in the initial Notice. (Many of which related to air quality).

24.    In fact, the Notice references that the inspection
was done pursuant to complaints received at OSHA's Office. And
the specific person or persons are not identified and it is
understandable, as I had a Grievance pending during this time
period, that the Defendants would believe that I was someone
who had filed a complaint with the OSHA Office. Though I do
not know this for sure, it is circumstantial evidence that my
removal from UNICOR, the OSHA factory inspection, and the Defendants
refusal to return me to the factory (as well as the "finding"
of the scrap piece of plastic) -- all occurred within some 30
days of each other.

25.    While I believe that this Narrative of the Facts to

7

sufficient for the Defendants to prepare their Defense; I will state that I reserve the right to Supplement it and that I hereby incorporate by reference, as if set forth fully herein, all the Pleadings and supporting materials that I have filed and/or referenced. To wit, the Exhibits filed by both myself and the Defendants are included as proffers to the Court and will be relied upon by the Plaintiff in the Witness List and Exhibit List below.

26. And furthermore, Plaintiff expects to receive additional materials by way of Discovery and will Supplement the respective Narrative of Facts, Witness List, and Exhibit List as necessary. All in a continued effort to fully place his cause before the Court and to equitably have the Issues, Facts, Exhibits and other matters outlined for Trial. Or, more precisely, the Issues, Facts, Exhibits and Defense which are not disputed so that the Trial will be better organized and not waste precious judicial resources and the Jury's time and efforts.

## WITNESS LIST WITH TESTIMONY SUMMARY

WITNESS:          ADDRESS:

1. Juan Davila-Bajana,  P.O. Box 8000, Bradford, PA 16701.

   SUMMARY: The above set forth Narrative of Witness
   Testimony and Exhibits to be adduced, are referenced as
   if set forth fully herein.  And in addition to the above,
   Plaintiff will also state that the actual Grievance that
   is the underlying substance of this Complaint -- was not
   filed until after he had been removed from the UNICOR
   factory and was not being returned.

   So the actual reason for his having been initially
   not returned is not absolutely dispostive of this Cause,
   as the Claim is retaliation.  And the retaliation is for
   not having returned Plaintiff to his UNICOR job.  And
   even if it was for the purpose as stated in the Second
   Motion to Dismiss -- it is still retaliatroy simply because
   the Defendants still had not complied with the UNICOR
   policy and therfore they are not immune from suit.

2. Dave English   FCI McKean, P.O. Box 5000, Bradford, PA
   16701.

   SUMMARY:  Generally, Defendant English was the staff
   memeber who initially had asked me, inmate Aponte, and
   inmate Cortez, to leave UNICOR the evening that the "scrap
   piece of plastic" was found in the UNICOR factory.  He
   will be able to testify as to what was found, who it was
   reported to, what their decision(s) were as to the course
   to be undertaken with respect to the "incident", and what

he recommended that should have been done becasue of the piece of scrap materials.

I also believe that Defendant English will be able to testify as to having seen me speaking to inmate Kevin Siggers and _____; both of whom had also filed Grievances on the factory conditions.  In fact, they were both present when I withdrew my initial Grievance on the Factory conditions.  Also, there were other inmates who had complained verbally to the staff and were contemplating filing of Grievances; whom he would also have seen me talking to.

This would have been a topic of discussion between him and the other Defendants, as well as other UNICOR staff.


3. <u>Stephen Housler</u>  FCI McKean, P.O. Box 5000, Bradford, PA 16701.

<u>SUMMARY:</u>  Defendant Housler was present at the factory on a number of ocassions when he was to have been conducting safety inspections at the prison.  At these times Defendant Housler would have personally witnessed the violations which were stated in my Grievance and ultimately itemized by OSHA in its Notice of Violations.

He will also be able to testify as to the "meeting" which resulted in my having withdrawn my Grievance on the conditions at the factory.  Because of this he will be able to state that the other Defendants there were indicating that I could be returned to the factory.  But that it was important to get the Grievance "resolved" right away.  And while the Defendants may not have actually siad: "drop your Grievance

and we'll give your job back." But the reality was that
if Plaintiff had not withdrew his Grievance he would not
have been returned to the factory.

In fact, the inspection at the factory for "complaints"
by/to OSHA was clearly atributed to me.


4. <u>Tim Holohan</u>    FCI McKean, P.O. Box 5000, Bradford, PA
16701.

SUMMARY:  Defenant Holohan was also present on the factory
floor at times when I was talking to other inmates.  And
while I cannot state that he could testify that he heard
me talking to the other inmates about filing Grievances
on the conditions at the factory, he did see  me talking
to inmates who also filed Grievances on the conditions at
the UNCIOR factory.

After having been sent home and filing my Grievance on
the factory conditions, and then withdrawing same; I appraoched
Defendant Holohan at the mainline during the noon meal about
having myself reinstated to the prison factory.  This was
after Defendant Forsyth had left the prison (and I had asked
her to be returned to the factory); and he told me that
he would check into it and see me later.

The following week he reported that "someone there doesn't
like you and your not going to get your job back."  He never
referenced anything about having been denied for safety
or security reasons.  Nor did he tell me that this was a
previous decision of Defendant Forsyth.  In fact, he did
not tell me who the "someone" is/was -- and at this time

Defendant Holohan will be able to be compelled to identify this individual(s) for the Jury.  Which will enable them to better reach the retaliatory nature of the denial of Plaintiff's prison job; without justification.

Which this is when Plaintiff filed his second Grievance which contained the present retaliation Claim now going before the Jury.

5. <u>Marty Sapko</u>    FCI McKean, P.O. Box 5000, Bradford, PA 16701.

<u>SUMMARY:</u>    Defendant Sapko was the UNICOR Factory Manager and often walked the flor and also saw me speaking to the inamtes who filed complaints about the factory conditions. Again, Plaintiff can not state that Defendant Sapko actually heard the conversation(s) and that they were about fiilng Grievances on the factory conditions.  And, in fact, this may not have been releevant at the time of this observation; but once the Notice from OSHA came and the Grievances were filed by myself and other inmates -- it would have been extremely releavnt.

And as I stated previously, Defendant Sapko will be able to testify that he was indicating to me at the meeting with co-defendants about my Grievance; he was indicating that it would help the process of my return to my factory job if I withdrew my Grievance.  Again, I am not stating that he will testify that he specifically told me in certain words to withdraw my Grieavnce.  But he will be able to testify that he strongly indicated that this was a "sticking

point" in Plaintiff being returned to his factory job.

At this time, in what Plaintiff deems to have been a response to his Resopnse to the Defendants latest Motion for Summary Judgement; Defendant Sapko, who is now the SOI at FCI McKean, has twice called Plaintiff to the UNICOR factory and offered him employment at the factory. Both times there was no mention of Plaintiff having been denied employment at the factory pursuant to a previous decision that he posed a security threat.

However, both times Defendant Sapko has refused to give Plaintiff his back pay for the time that he has been denied his facotry job; and also has refused to return Plaintiff at his previously held Grad with his Longevity. And the last time Planitiff was informed that not only would he not give him his past pay -- he also has now instituted a policy that bars Plaintiff from ever again even reaching his previous Grade.

Defendant Sapko will testify also that Plaintiff has declined to be placed in the factory under those conditions and without being given his lost pay and seniority.


6. <u>Robert Klark</u>   FCI McKean, P.O. Box 5000, Bradford, PA 16701.

SUMMARY:   Defendant Klark was mainly at the Camp facility and basically did not come to the FCI much. Though there were times that he was there as the two factorys were interrelated and this caused him to have business at the FCI from time to time. And it is possible that he will be able to testify

13

that he had seen Plaintiff in conversation with other inmates who field Grievances about the conditions at the factory.

He was also there when the Grievance that I had filed on the conditions at the factory was withdrawn. And I feel that he will be able to testify that the other individuals, especially Defendant Sapko, clearly stated that it was important to have the Grievance resolved, specifically "taken care of", before I was returned to work. Though Defendant Sapko stated this as if I was going back to work, but in the mean time I should resolve my Grievance.

And he will also be able to testify that the other Defendants were very nice and cordial and kept trying to get me to agree that I was withdrawing the Grievance on my own. When it was obvious that the UNICOR employees were more worried about the Grievance being withdrawn then my being returned to work.

7.  <u>Deborha Forysth</u> FCI Jessup, GA

SUMMARY:  As a general matter, I am not sure what exactly Defendant Forsyth will testify to. At this time Plaintiff intends to call her mainly to impeach her with the testimony of other witnesses and through the introduction of Exhibits.

But Plaintiff will be testifying to his inquires of Defendant Forsyth as to his being returned to his factory job. In fact, Plaintiff will be entering Exhibits, which are already part of the Record as Exhibits to pleadings filed; his Administrative Remedies which clearly show that Defendant Forsyth has stated that she was approached by

14

me in reference to being returned to the factory.

Yet she has now filed a Declaration stating that I never approached her for my job back.  And she also states other falsities which have been exposed in Plaintiff's Response to the <u>Second</u> Motion to Dismiss.

8.  <u>OTHER WITNESSES:</u>  Plaintiff will supplement this Witness List and any relevant Summaries as promptly as possible.

EXHIBIT LIST

| EXHIBIT | DESCRIPTION: |
|---|---|
| P-1 | FIRST GRIEVANCE OF FACTORY CONDITIONS. |
| P-5 | SECOND GRIEVANCE OF RETALIATION FOR NOT BEING RETURNED TO UNICOR FACTORY. |
| P-10 | OSHA NOTICE OF VIOLATIONS. |
| P-15 | OSHA REPORT OF INSPECTION. |
| P-20 | DECLARATION OF DEFENDANT SAPKO (11/21/06). |
| P-22 | DECLARATION OF DEFENDANT ENGLISH (11/17/06). |
| P-24 | DECLARATION OF DEFENDANT FORSYTH (11/08/06). |
| P-26 | DECLARATION OF DEFENDANT HOLOHAN (11/16/06). |
| P-30 | PLAINTIFF'S ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL FROM BOP SENTRY SYSTEM. |
| P-32 | PLAINTIFF'S INMATE DISCIPLINARY DATA CHRONOLOGICAL DISCIPLINARY RECORD. |
| P-34 | PLAINTIFF'S UNICOR WORK PERFORMANCE EVALUATION RECORD (04/06/01). |
| P-36 | PLAINTIFF'S UNICOR "SPECIAL ACHIEVEMENT AWARD", SIGNED BY DEFENDANT FORSYTH (06/04/99). |
| P-38 | PLAINTIFF'S UNICOR "SPECIAL ACHIEVEMENT AWARD", SIGNED BY DEFENDANT FORSYTH (06/08/01). |
| P-40 | PLAINTIFF'S UNICOR "SPECIAL LETTER OF COMMENDATION", SIGNED BY DEFENDANT FORSYTH, (02/02/01). |
| P-42 | PLAINTIFF'S UNICOR "AWARD OF EXCELLENCE", SIGNED BY DEFENDANT FORSYTH, (11/02/01). |
| P-45 | PLAINTIFF'S INCIDENT REPORT AND RELATED PAPERS FOR VIOLATING BOP POLICY. |
| P-50 | FEDERAL PRISON INDUSTRIES PROGRAM STATEMENT. |

P-55        PLAINTIFF'S FIRST DISCOVERY REQUEST.

P-60        DEFENDANTS' FIRST SET OF INTERROGATORIES.

P-62        PLAINTIFF'S ANSWERS TO DEFENDANTS' FIRST INTERROGATORIES.

P-64        PLAINTIFF'S FIRST SET OF INTERROGATORIES.

P-66        DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES.

P-68        DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT.

P-70        DECLARATION OF INMATE *AARON FARLEY (02/24/07)*.

## DECLARATION AND CERTIFICATE OF SERVICE

I, Juan Davila-Bajana, hereby declare and affirm under the penalty of perjury, pursuant to 28 USC §1746(2), that the foregoing pleading is true and correct to the best of my knowledge and recollection, and that I served a true and correct Original by first-class postage prepaid surrender to the prison officials, this 15th day of April, 2007, to:

1. Paul D. Kovac
   Assistant U.S. Attorney for
   Western District of Pennsylvania
   700 Grant Street
   Suite 4000
   Pittsburgh, PA 15219

_____
Juan Davila-Bajana, Pro Se
Fed. Reg. No. 47580-053
FCI McKean
P.O. Box 8000
Bradford, PA 16701

18

Juan Davila-Bajana                                    April 15, 2007
Fed. Reg. No. 47580-053
FCI McKean
P.O. Box 8000
Bradford, PA 16701

Clerk of the Court
U.S.D.C. for W.D. PA
P.O. Box 1820
Erie, PA 16501

RE:   DAVILA V. HOLOHAN, ET AL., CIVIL ACTION NO. 04-253(E).

Dear Sirs:

        Please find enclosed my Exhibit A to my Show of Cause filed
with the Court last week on the 11th of April, 2007.

        As referenced in same I am submitting the Court Ordered
Narratives and other filings for Docketing.

        At this time I believe that this should bring me within
the desired procedural position that the Court wishes.

        As always, I thank you for your time and efforts in assisting
me in filing my pleadings with the Court.  And should either
you or the Court require more, please contact me at the above
address and I will respond in kind promptly.

        I would make one request from you though, as I am preparing
for Trial at this time I would respectfully ask that you forward
me an updated Docket Sheet for my file.  I believe that this
will be indispensible for Trial.

Sincerely,

Juan Davila-Bajana


enc. YES -- PRETRIAL NARRATIVE.
cc.  FILE; PAUL KOVAC, AUSA.