UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUAN DAVILLA-BAJANA, : | |
| PLAINTIFF, : | |
| -VS- : | |
| TIM HOLOHAN, UNICOR BUSINESS : | |
| MANAGER, : | |
| DEBORA FORSYTH, SUPERINTENDENT: | |
| OF INDUSTRIES, : | |
| DAVE ENGLISH, UNICOR GENERAL : | CIVIL ACTION NO. 04-253E |
| FOREMAN, : | |
| ROBERT KLARK, CAMP : | JUDGE: SEAN MCLAUGHLIN |
| ADMINISTRATOR, : | |
| [FNU] HOUSELER, SAFETY MANAGER: | MAGISTRATE JUDGE: SUSAN P. BAXTER |
| DEFENDANTS : | |

### FIRST AMENDED COMPLAINT

I.  INTRODUCTION:

1. NOW COMES Juan Davila-Bajana, Pro Se (Plaintiff), and hereby submits his First Amended Complaint pursuant to the Homorable Susan Paradise Baxter's (Judge Baxter) order of 12/08/2006. And as a general matter, this Complaint is intended to be a "stand-alone" document in all respects and incorporates all non-disputed facts and omissions as entered in the Record of this Cause by the interested.

2. Additionally, Plaintiff removed uninterested parties from the caption in order to assist the Court by not having dismissed defendants listed. To wit, removed are the United States of America and Marty Sapko (who is being moved to be dismissed by separate

1

motion by Plaintiff).

## II. JURISDICTION

3. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

§ 1983 Civil action for deprivation of rights.

4. ... it was held that a violation of the Fouth Amendment's command against unreasonable searches and seizures, by a federal agent acting under color of federal authority, gave rise to a federal cause of action for damages consequent upon the agents unconstitutional conduct.

Biven v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 US 388, 29 Led 2d 619, 91 S Ct. 1999 (1971).

## III. VENUE

5. Plaintiff States that this Court is the proper venue for this Action as all the relevant Acts took place within the territorial boundaries of the Western District Of Pennsylvania.

## IV. PARTIES

6. The Plaintiff, Juan Davila-Bajana, is a federal Bureau of Prisons (BOP) inmate housed at the Federal Correctional Institute Mckean (FCI Mckean). And was same throughout the relevant time period of this Action.

7. The Defendants, and all of them, as listed in the Caption supra, are BOP employees; and were during the relevant time period of this Action. Additionally, they were working at FCI Mckean's Federal Prison Industries (FPI) Factory (UNICOR).

8. The Defendants, and all of them, have been served and have appeared before the Court through their Attorney Paul D. Kovac, Assistant U.S. Attorney for the Western District of Pennsylvania, 700 Grant Street, Suite 4000, Pittsburgh, PA 15219.

## V.  MATERIAL FACTS:

9. After Plaintiff's placement at FCI Mckean by the BOP, he began working at the UNICOR Factory (UNICOR) on 03 /23 /1999 . Plaintiff was employed there until his being "sent home" 03/31/2003, with a short interim leave for disciplinary action.

10. The processes used to produce the products at the factory resulted in an excessive amount of silica dust from sanding the particle board. Also, the smoking area at the factory was situated in a general area, and has insufficient exhaust fans to remove the "second hand" smoke. (Also known as "environmental tobacco smoke" (ETS)).

11. During the months prior to Plaintiff being "sent home" from the factory, there were inmates who expressed discomfort with the excess dust and ETS. In fact, at least one person at the FCI Mckean UNICOR factory reported this to the Occupational Safety and Health Administration (OSHA); that employees and staff were exposed to potentially dangerous conditions.

12. Because of Plaintiff's own personal concerns for his health and safety, he discussed these problems at the factory with other inmates. This took place in plain view and with staff present in the area or walking past.

13. Plaintiff decided to file Administrative Remedies against the UNICOR factory, but had difficulty retaining the necessary forms to begin the process. Before he was able to get the form he, inmate Cruz, and inmate Aponte were called from their jobs and told to return to the housing unit by Dave English.

14. Plaintiff was further directed to wait for the call-out which would change his job from evening shift to day shift. When asked for particulars, Plaintiff was told by Defendant English "be glad you still have a job!" Plaintiff then retreated to his housing unit.

15. Thereafter, on April 8, 2003, just after being sent back to the unit, Plaintiff filed his Remedy with the BOP staff, complaining of the silica dust and ETS. This complaint was withdrawn on May 1, 2003 after a meeting on 04/29/2003, with Defendants Holohan, Housler, Sapko, and Klark.

16. Part of this discussion was that they had had the factory checked and it was in compliance with "standards" set by OSHA. Also, Plaintiff felt that there would be a quicker job change for him to day shift, if he withdrew his complaint as stated by the Defendant.

17. While Defendant English claimed that I complain too much about the dust and ETS; they all claimed that they informed Defendant Forsyth to return me to the factory.

4

18. Thereafter, from 05/01/03 thru 05/27/03, I repeatedly asked Defendant Forsyth to reinstate me to my UNICOR job. She did not put me back to work, but she did keep telling me to come back.

19. Defendant Forsyth then transferred from FCI Mckean and Defendant Holohan became acting superintendent of industries (S.O.I.). Plaintiff asked Defendant Holohan to be reinstated to his UNICOR job.

20. He was informed later that "you pi**ed someone off, you won't get your job back".

21. Plaintiff then filed a second Administrative Remedy alleging retaliation for removal from UNICOR for filing a Remedy against the dust and ETS. In this Remedy he sought to revive his 8th Amendment claim.

22. Plaintiff exhausted this Remedy through the entire process and it was denied on ___/___/___/.

23. Through the entire process Plaintiff argued his 8th Amendment claim and at each level the responding official responded to this claim.

24. Ultimately, after Defendant Forsyth's leaving, Defendant Sapko became the S.O.I. at FCI Mckean. Plaintiff asked him to be reinstated to UNICOR, to which Defendant Sapko replied he would do so.

25. However, Defendant Sapko then informed Plaintiff that he would have to "start fresh". This was a reference to starting without his longevity and at a grade 4 -- just like a new hire. Plaintiff rejected this as not acceptable because his refusal for employment was retaliatory,

26. Plaintiff requested his previous grade and longevity. He also requested his pay that he lost by not working.

27. During the time Plaintiff withdrew his original administrative remedy and the filing of this Complaint; the UNICOR factory at FCI Mckean was reported to OSHA for dust and ETS violations.

28. Upon inspection in the summer of 2003, OSHA did, in fact, find "serious" air quality violations at said factory. They were ultimately corrected and OSHA decided not to fine the factory.

29. Plaintiff states that these were the same violations he filed an Administrative Remedy on; and that they were present at the time of his employ at the factory.

30. Moreover, this "course of events" transpired while he was attempting to be returned to UNICOR. And that the Defendant's refusal to reinstate his job was retaliation and was part of his second set of grievances.

## VI. CLAIMS:

**COUNT ONE:**

31. Plaintiff incorporates by reference, as if set forth fully herein, the above Material Facts.

32. The Defendants, and all of them, were aware of the conditions at the factory. To wit, dust and ETS.

33. The Defendants, and all of them, were/are responsible for assuring Plaintiff's UNICOR job was a safe and healthy place to work.

34. The Defendants, and all of them, had procedures to assure the safety and healthful conditions at the factory. And they were aware of the violations because of their employment at the

6

prison factory.

35. Because the Defendants, and all of them, failed to maintain a safe and healthy workplace, or take corrective action until forced to they violated Plaintiff's 8th Amendment right against cruel and unusual punishment.

COUNT TWO:

36. Plaintiff incorporates by reference, as if set forth fully herein, the above set forth material facts and Count One.

37. The Defendants, and all of them, retaliated against Plaintiff for complaining about the dust and ETS, to themselves and other inmates; When they sent him back to his housing unit without an explanation.

38. The Defendants knew that Plaintiff would be filing a grievance like the other inmates, and this would cause them trouble. So they removed Plaintiff from UNICOR without notice or justification.

COUNT THREE:

39. Plaintiff incorporates by reference, as if set forth fully herein, the above set forth material facts and Counts One and Two.

40. The Defendants, and all of them, retaliated against Plaintiff for having filed his Administrative Remedy on the dust andETS, by not returning him to his factory job.

41. The Defendants, and all of them, never had a valid reason to remove Plaintiff from his UNICOR job. Much less did they have a reason for not returning him to the factory after telling him he would be changed to day shift.

42. Instead, the Defendants, and all of them, retaliated against Plaintiff for exercising his First Amendment Right to file complaints and seek redress in the Courts. The Defendants only reason for not returning him to his UNICOR job was simply that he had filed Administrative Remedies -- while originally to be employed at UNICOR -- but in transition from evening to day shift.

43. The Defendants are still retaliating by offering to return him to UNICOR, but at a lessor grade, without his prior longevity, without his lost pay, and without an opportunity to even get to his original pay grade -- even though he would be above that by now without the Defendant's illegal acts.

VII.   **RELIEF:**

44. WHEREFORE PLAINTIFF PRAYS, that this Honorable Court will schedule a Trial by Jury on all remaining material facts after the concomitant pre-trial motions/pleadings.

45. Plaintiff also seeks Compensatory and Punitive Damages from each of the Defendants in the amount of $500,000.00 and $500,000.00 respectively.

46. Plaintiff also seeks interest on his damages until such time as the judgement is satisfied.

47. Plaintiff also seeks an injunction against Defendants and their employers, Federal Bureau of Prisons and Federal Prison Industries; to implement a training program to assure the employees/Defendants, are able to recognize health hazards, report them, correct them, and also to identify retaliatory actions/motivations, report them, and correct them.

Respectfully Submitted,

### DECLARATION AND CERTIFICATE OF SERVICE

I, Juan Davila-Bajana, hereby declare and affirm under penalty of perjury pursuant to 28 USC §1746(2), that the foregoing pleading is true and correct to the best of my knowledge, and that I served, by first-class postage prepaid surrender to prison officials, a true and correct original of the foregoing pleading and accompanying declaration, the 11th day of June, 2007, to:

1.  Paul D. Kovac
    AUSA for W.D. of PA
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219

Juan Davila-Bajana
Fed. Reg. No. 47580-053
FCI Mckean
P.O. Box 8000
Bradford, PA 16701